536 So.2d 667 (1988)
STATE of Louisiana
v.
Guy A. POLZIN.
No. CR88-419.
Court of Appeal of Louisiana, Third Circuit.
December 14, 1988.
*668 Louis Cosenza, Leesville, for defendant-appellant.
Vernon Clark, Asa Skinner, Asst. Dist. Attys., Leesville, for plaintiff-appellee.
Before GUIDRY, FORET and KNOLL, JJ.
GUIDRY, Judge.
On April 2, 1987, defendant, Guy A. Polzin, was charged by bill of information with two counts of distribution of marijuana in violation of La.R.S. 40:966(A). At the conclusion of his jury trial, defendant was acquitted on one count and found guilty on the other. A pre-sentence investigation was ordered and defendant was sentenced on January 27, 1988. The court imposed a sentence of five years at hard labor, suspended, a fine of $2,000.00, and placed defendant on five years of supervised probation under the following conditions: (1) all mandatory and permissive conditions of probation in La.C.Cr.P. art. 895(A); (2) pay all court costs and restitution to the indigent defendant board in the amount of $500.00; (3) submit to analysis and treatment for substance abuse as may be recommended; and, (4) refrain from all use of illegal controlled dangerous substances and refrain at all times from associating with persons known or reputed to be users of or to traffic in illegal controlled dangerous substances. From that conviction and sentence, defendant appeals urging three assignments of error.

FACTS
Defendant was charged with two counts of distribution of marijuana from sales made to Valarie Vigil, an agent working for the U.S. Army, Criminal Intelligence Division, on January 23, 1987 and on February 6, 1987. Polzin was acquitted on the first count but found guilty of distributing marijuana on February 6, 1987, count two.
On the evening of February 6, 1987, Valarie Vigil, an agent working for the U.S. Army, Criminal Intelligence Division (CID) at Fort Polk, entered the Pleasure Palace Lounge in Vernon Parish, Louisiana for the purpose of making a controlled drug buy. Her activities were observed from a remote location by a superior from the Fort Polk CID and by two undercover agents from the Vernon Parish Joint Drug Suppression Team. For Ms. Vigil's safety, she was equipped with an electronic device so that the officers conducting surveillance could monitor her progress. She had previously made arrangements to purchase marijuana from Michael Rexrode, a co-defendant charged with Polzin in the same bill of information. She approached Rexrode and asked him if he had any marijuana to sell. Rexrode answered in the negative but expressed to her his belief that marijuana could be purchased from a neighboring night spot, the Oriental Gardens Lounge, located approximately one hundred yards from and immediately next door to the Pleasure Palace. He asked his friend, appellant, Guy Polzin, to go next door to the Oriental Gardens to locate a prospective seller. Polzin was observed by Ms. Vigil and the other officers when he left the Pleasure Palace, while on his way to the Oriental Gardens and when he returned to the Pleasure Palace a short time later.
While at the Oriental Gardens, he met a third co-defendant, Gwenievere Friend, also charged in the same bill of information. Ms. Friend was acting for a friend, Monica Heuyser, who had several bags of marijuana in her vehicle which was parked outside the Oriental Gardens. Polzin went with Ms. Friend to Ms. Heuyser's vehicle to get a look at the drugs. Polzin returned to the Pleasure Palace and informed the undercover *669 agent that he had located a seller. He and the undercover agent, Ms. Vigil, proceeded next door to the Oriental Gardens. Polzin introduced the undercover agent to Ms. Friend, whereupon the two ladies consummated the transaction in the ladies restroom, outside of Polzin's presence. Polzin and the undercover agent then left the Oriental Gardens and returned to the Pleasure Palace.
Shortly thereafter, Agent Vigil returned to the Vernon Parish Sheriff's office and the marijuana was turned over to Deputy Prentis Dixon.

ASSIGNMENT OF ERROR NO. 1
Defendant maintains that the trial court erred in refusing to give his requested jury instruction on the law of principals. Defendant argues that, if anything, he was an agent of the buyer and not the seller in this transaction. Defendant contends that when one reads the definition of principals in pari materia with the offense of distribution of marijuana, the facts of this case will lead to "absurd consequences", such as the buyer of marijuana being convicted of distribution.
Defendant asserts that the jury in this case was entitled to consider whether the activities of the defendant were more akin to those of a buyer than those of a seller of narcotics. The requested jury instruction reads as follows:
"The defendants are charged as principals for allegedly having aided and abetted in the distribution or directly, or indirectly counseling or procuring another to distribute marijuana to Investigator Vigil.
The state must prove a community of scheme, collaboration or association between the defendant and the distributor, Gwenievere Friend, or that the defendants had a personal or financial interest in the transaction.
Proof that the defendants introduced the buyer to the seller is, alone, insufficient to show that a defendant is a principal to the crime of distribution of a controlled dangerous substance. Commonwealth v. Harvard [356 Mass. 452], 253 N.E.2d 346 (Mass.1969); United States v. Moses, 220 F.2d 166 (3 Cir.1955); Jones v. State, 481 P.2d 169 (Ok.1971), [sic] and cases cited thereunder."
We find no merit in this assignment of error. La.C.Cr.P. art. 807 states:
"The state and the defendant shall have the right before argument to submit to the court special written charges for the jury. Such charges may be received by the court in its discretion after argument has begun. The party submitting the charges shall furnish a copy of the charges to the other party when the charges are submitted to the court.
A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly, correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given."
It is the duty of the trial judge to give a requested charge which does not require qualification, limitation or explanation and is not included in the general charge or in another special charge to be given, if it is wholly correct and pertinent to the case. State v. Shilling, 440 So.2d 110 (La.1983). A requested charge must be supported by the evidence, for the trial court is not required to instruct the jury on abstract principles of law. State v. Bennett, 454 So.2d 1165 (La.App. 1st Cir.1984).
The trial judge gave the following instruction on principals:
"All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the crime, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals and are guilty of the crime charged."
The charge given by the trial judge was correct and adequate to inform the jury on the law of principals. See La.R.S. 14:24. Requested charges which are already substantially given and covered by the general charge are properly refused. State v. Holmes, 388 So.2d 722 (La.1980). In addition, *670 defendant's charge does not contain an accurate statement of the law of principals as defined by the legislature and interpreted by the courts of this state. Therefore, it was properly refused by the trial judge.

ASSIGNMENT OF ERROR NO. 2
Assignment of error number 2 was not briefed and therefore is considered abandoned. State v. Dewey, 408 So.2d 1255 (La.1982); Uniform RulesCourts of Appeal, Rule 2-12.4.

ASSIGNMENT OF ERROR NO. 3
Defendant asserts that the trial court erred in overruling his motion for mistrial when two jurors, who had been impaneled and sworn, were excused by the court from jury duty on grounds of illness and/or hardship. On the morning of the third day of jury selection, the trial judge excused two jurors who had previously been impaneled and sworn. One of the jurors, a Mr. Garrett, had a death in the family and the other juror, John Willis, had been shot during a quarrel the previous night. Following the excuse of Garrett and Willis, there were eight jurors who had been sworn and impaneled. The court then proceeded to impanel the four remaining jurors, after which one alternate juror was impaneled and sworn. Defendant was not allowed any additional peremptory challenges. Defendant objected and moved for a mistrial.
Defendant has withdrawn his objection to the juror who asked to be excused because of a death in the family. That juror was present and available for questioning. Willis was not available to be questioned as to the veracity of his claim of injury or regarding the seriousness of his injury.
Appellant argues that La.C.Cr.P. art. 789 which provides for the replacement of a juror with an alternate juror in the event the former becomes unable to serve or is disqualified should govern the situation in this case. We disagree.
At the time the court excused Garrett and Willis the regular panel had not been completed and no alternate jurors had been impaneled. Article 796, which is entitled "Removal of juror after swearing", is directly applicable to the case at bar. That article states:
"If it is discovered after a juror has been accepted and sworn, that he is incompetent to serve, the court may, at any time before the first witness is sworn, order the juror removed and the panel completed in the ordinary course."
We next consider whether juror, John Willis, was properly found "incompetent to serve". The Louisiana Supreme Court, in State v. Rounsavall, 337 So.2d 190 (La.1976), stated:
"... The phrase `incompetent to serve' embodied in Article 796 refers to death, illness or any other cause which renders a juror unfit or disqualified to perform his duty as prescribed...."
See also State v. Delore, 381 So.2d 455 (La.1980).
The morning of November 12, 1987, after Mr. Willis was accepted and sworn, the trial judge was informed via telephone by Mr. Willis' daughter that, after leaving court, her father had "butted into" an altercation between two people and had suffered a gunshot wound to the head. As a result of that wound, she reported, Mr. Willis required eighteen stitches to his head and was also suffering with powder burns.
The foregoing information was put on the record by the trial judge in the presence of the defense attorneys and with the defendant present. Although at the time Mr. Willis was replaced, the trial judge was relying on the daughter's word that her father had been shot, the court was later furnished with copies of hospital emergency room records which verified the juror's injuries. The trial judge acted in a prudent manner in excusing Mr. Willis as incompetent to serve and proceeding as required by La.C.Cr.P. art. 796. See also State v. Carmouche, 75 So. 68, 141 La. 325 (La.1917), and State v. Hill, 15 So. 145, 46 La.Ann. 736 (La.1894).
Finally, defendant complains that the trial judge erred in refusing to allow *671 any additional peremptory challenges after excusing the two jurors. The trial court is not required to grant additional peremptory challenges in each case where a sworn juror is excused. La.C.Cr.P. arts. 796, 799; State v. Perry, 420 So.2d 139 (La.1982), and State v. Mitchell, 412 So.2d 547 (La.1982).
This assignment is also without merit.
For the foregoing reasons, the conviction and the sentence imposed are affirmed.
AFFIRMED.