ROBERT A. CHAISSON, Judge.
1 ^Defendant, Kewana Drewery, appeals her convictions for possession with intent to distribute marijuana and possession of a firearm while in possession of a controlled dangerous substance. For the reasons that follow, we affirm defendant’s conviction for possession with intent to distribute marijuana but vacate her conviction and sentence for possession of a firearm while in possession of marijuana.

STATEMENT OF THE CASE

On January 11, 2007, the St. John the Baptist Parish District Attorney filed a bill of information charging defendant, in count one, with possession with intent to distribute marijuana, in violation of LSA-R.S. 40:966(A)(1), and in count two, with possession of a firearm while in possession of a controlled dangerous | -¡substance, in violation of LSA-R.S. M-.OSiE).[1] At her March 5, 2007 arraignment, defendant pled not guilty. Defendant thereafter filed several pre-trial motions, including motions to suppress the statement and the evidence, which were heard and denied by the trial court.
The matter proceeded to trial before a twelve-person jury. After considering the evidence presented, the jury, on May 26, 2011, found defendant guilty as charged. On September 19, 2011, the trial court sentenced defendant, on count one, to eight years imprisonment in the Department of Corrections, suspended three of the eight years, and placed defendant on probation for three years. In addition, the trial court imposed an eight thousand dollar fine. With regard to count two, the trial court sentenced defendant to five years imprisonment without benefit of parole, probation, or suspension of sentence and imposed a fine of one thousand dollars.[2] The trial court ordered these sentences to run concurrently. Defendant now appeals.

FACTS

Shortly after midnight on September 11, 2006, Sergeant Victor Sehilleci of the Louisiana State Police, was traveling east down Interstate 10 towards U.S. 51 when he encountered a 2006 Dodge Stratus in the left lane traveling at a slow rate of speed, approximately forty-five miles per hour, *1250 and impeding the flow of traffic. Sergeant Schilleci observed the vehicle weave and cross the fog line by about six inches on several occasions. Believing the driver to be either intoxicated or fatigued, Sergeant Schilleci conducted a traffic stop to assess the condition of the driver.
Upon stopping the vehicle, Sergeant Schilleci asked the driver, Kewana Drew-ery, to exit the vehicle and to produce her driver’s license and the vehicle registration. As she handed the officer her driver’s license, he noticed that her hand was shaking and that she appeared to be nervous. Defendant was unable to produce the vehicle registration, but rather provided the officer with a rental agreement for the vehicle. Upon reviewing the rental agreement, Sergeant Schilleci noted that the vehicle had been rented on September 10, 2006, at approximately 1:45 p.m., that a third party who was not present at the scene was named as the renter on the agreement, and that defendant was not listed as an authorized user. Sergeant Schilleci further learned that the renter of the vehicle was Jacques Rivers and that defendant’s trip was a “quick and short turn-around trip” based on the time and date referenced in the rental agreement. When Sergeant Schilleci then inquired into the nature of their trip, defendant advised him that they had come from Houston, Texas, where they had been checking on her apartment.
Based on the information gained from the rental agreement as well as his conversation with defendant, Sergeant Schilleci decided to speak to the passenger of the vehicle, co-defendant Cooks.[3] Sergeant Schilleci went to the passenger side of the car and proceeded to ask Cooks about their trip. Cooks told him that they had been in Baytown, Texas, visiting family. During his conversation with Cooks, Sergeant Schilleci began to “detect the overwhelming odor of green marijuana coming from within the vehicle.” Sergeant Schil-leci then asked Cooks if there were any weapons in the vehicle, and Cooks advised him that there was a handgun underneath her seat, which the officer secured for safety purposes.[4] Additionally, upon illuminating the interior of the vehicle with his flashlight, Sergeant Schilleci | ¿noticed an odor neutralizer, four cell phones, and three juveniles sitting in the back seat. After securing the weapon in his vehicle, Sergeant Schilleci spoke to defendant who again told him that they had gone to her apartment in Houston and did not visit family members. Sergeant Schilleci then advised defendant of her Miranda[5] rights and asked her whether there was anything illegal inside the vehicle and whether there was any luggage inside the trunk. According to Sergeant Schilleci, defendant advised him that there was nothing illegal inside the vehicle and that she had a bag inside the trunk.
Pursuant to the officer’s request, defendant gave her verbal consent to search the vehicle. Upon opening the trunk, Sergeant Schilleci observed “two separate black garbage bags” which contained bales of marijuana. According to the officer, “one of the green bricks had fallen out” and was visible. Further, there were two Ziploc bags containing marijuana, one of which had opened and spilled marijuana inside the trunk.[6]
*1251 Sergeant Schilleci then placed defendant and Cooks under arrest and transported them to the St. John the Baptist Parish lockup. While being taken into custody, Sergeant Schilleci heard defendant and Cooks make statements to each other to the effect of “we’re not going to take this charge for him, this is going to be his charge.” Once at the lockup, Sergeant Len Marie of the Louisiana State Police took possession of the evidence, advised defendant and Cooks of their rights, and conducted a brief interview with them. Before interviewing the two women, Sergeant Marie also heard them say, “I’m not taking this charge, I’m not taking his charge.” Both defendant and Cooks denied possession and knowledge of the marijuana. They advised Sergeant Marie that they knew Jacques Rivers, | nwho was listed on the vehicle rental agreement, and further told him about the black truck belonging to Jacques Rivers that was traveling with them. In addition, defendant and Cooks provided Sergeant Marie with a potential address where the black truck could be located.
Sergeant Marie traveled to the address provided by defendant and Cooks, which was an apartment complex near Lapalco Boulevard, in an attempt to locate the black truck. At this time, Sergeant Marie did not see a black truck; however, he returned later in the day and observed a black truck in the parking lot. Sergeant Marie then went to speak to the apartment complex manager who advised him that Jacques Rivers was not renting an apartment at the complex. Sergeant Marie went back to the parking lot to wait by the truck, but it was gone. Sergeant Marie subsequently called Rivers, using the phone number listed on the vehicle rental agreement. Sergeant Marie asked Rivers to come in for an interview, but Rivers refused and hung up the phone. Sergeant Marie was unable to contact Rivers again.
At trial, both defendant and Cooks testified as to the events that occurred on then-trip. On September 11, 2006, defendant called Cooks and asked her to accompany her to Houston to check on her apartment. Cooks agreed, and defendant picked her up at about 9:30 a.m., in a black Nissan Titan truck owned by Jacques Rivers, a high school acquaintance.[7] On their way to Houston, they decided to stop in Bay-town, Texas, to visit Cooks’ daughter’s grandmother. While in Baytown, defendant received a phone call advising her that she had to report to work the next morning at six o’clock. As a result of this phone call, the two women stayed in Bay-town for a few hours, and then had to return to New Orleans instead of continuing on to Houston. While still in Baytown, Rivers, who was |7apparently also there, called defendant and offered to fill up the truck with gas.[8] When they met at the gas station, Rivers told them that he wanted to drive his truck back home and that they could drive the rental car that he had. At that point, they switched vehicles. According to defendant and Cooks, neither of them ever went into the trunk of the vehicle. Rather, Rivers put defendant’s bag in the trunk for her.
*1252 During her testimony, Cooks admitted to owning and possessing the gun, explaining that she had obtained it after Hurricane Katrina for protection; however, she denied any knowledge of the marijuana. Defendant also denied any knowledge of the marijuana and further denied that there was a pungent odor of marijuana inside the car.

LAW AND ANALYSIS

In her sole assignment of error, defendant contends that the trial court erred in denying her motion for new trial which was based on insufficient evidence.
On August 15, 2011, defendant filed a motion for new trial, alleging that there were contested issues raised at trial that were not sufficiently proven by the State. On September 8, 2011, the court conducted a hearing on defendant’s motion. At the hearing, defense counsel argued that the State presented no evidence at trial to show that defendant had knowledge or possession of the marijuana contained in the trunk of the rental car she was driving. According to defendant, Jacques Rivers, an absent third party, was responsible for the marijuana contained in the trunk.
The State responded that although the evidence was circumstantial, it was sufficient to convince a reasonable trier of fact that defendant was guilty of | ^possession with intent to distribute marijuana. In its argument, the State noted the large amount of marijuana, the odor of the marijuana, the number of cell phones in the car, and the presence of air freshener in the car. The State further asserted that the fact that a third party may have also been involved in the transportation of the marijuana did not relieve defendant of her role in committing the charged offenses. After considering arguments of counsel, the trial judge denied defendant’s motion for new trial.
Defendant now challenges that denial. She argues that her motion for new trial was improperly denied because the State failed to prove that she had knowledge, dominion, or control of the marijuana found in the trunk. Specifically, defendant maintains that the facts established at trial indicated that the marijuana belonged to Jacques Rivers and that the police failed to properly investigate this matter, calling into question the credibility of Trooper Schilleci.
LSA-C.Cr.P. art. 851 provides, in pertinent part, that a “motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.” The decision on a motion for a new trial rests within the sound discretion of the trial judge and his ruling will not be disturbed on appeal absent a clear showing of an abuse of discretion. State v. Quest, 00-205 (La.App. 5 Cir. 10/18/00), 772 So.2d 772, 784, writ denied, 00-3137 (La.11/2/01), 800 So.2d 866.
LSA-C.Cr.P. art. 851(1) provides that, on motion of the defendant, the court shall grant a new trial whenever the verdict is contrary to the law and the evidence. A denial of a motion for new trial based on the verdict being contrary to the law and the evidence is not subject to review on appeal. State v. Condley, 04-1349 (La.App. 5 Cir. 5/31/05), 904 So.2d 881, 888-889, writ denied, 05-1760 (La.2/10/06), 924 So.2d 163. However, the Louisiana Supreme Court and this Court have addressed the constitutional issue of the sufficiency of the evidence under this circumstance. Therefore, the denial of the motion for new trial based on the sufficiency of the evidence is properly before this Court on review. State v. Baz *1253 ley, 09-358 (La.App.1/11/11), 60 So.3d 7, 19, writ denied, 11-282 (La.6/17/11), 63 So.3d 1039.
In reviewing the sufficiency of evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); State v. Sosa, 05-213 (La.1/19/06), 921 So.2d 94, 99. The rule as to circumstantial evidence is that, “assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.” LSA-R.S.15:438. The reviewing court does not determine whether another possible hypothesis of innocence suggested by the defendant offers an exculpatory explanation of events. Rather, the reviewing court must determine whether “the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt.” State v. Mitchell, 99-3342 (La.10/17/00), 772 So.2d 78, 83; State v. Bazley, 60 So.3d at 19.
In the instant case, defendant challenges the evidence relating to her conviction for possession of marijuana with intent to distribute, in violation of LSA-R.S. 40:966(A)(1). The crime of possession with intent to distribute marijuana requires proof that the defendant knowingly and intentionally possessed the drug and that he or she did so with the specific intent to distribute it. State v. Cho, 02-274 (La.App. 5 Cir. 10/29/02), 831 So.2d 433, 442, writ denied, 02-2874 (La.4/4/03), 840 So.2d 1213. Guilty knowledge is an essential element of the crime of possession of contraband, and such knowledge may be inferred from the circumstances. State v. Marshall, 02-1067 (La.App. 5 Cir. 2/25/03), 841 So.2d 881, 887, writ denied, 03-909 (La.9/26/03), 854 So.2d 345.
The element of possession may be established by showing that the defendant exercised either actual or constructive possession of the substance. State v. Proctor, 04-1114 (La.App. 5 Cir. 3/29/05), 901 So.2d 477, 482. A person may be in constructive possession of a drug even though it is not in his physical custody, if it is subject to his dominion and control. A subject can have constructive possession if he jointly possesses drugs with a companion and if he willfully and knowingly shares with his companion the right to control the drugs. State v. Lathers, 03-941 (La.App. 5 Cir. 2/23/04), 868 So.2d 881, 885.
The mere presence of the defendant in the area where a controlled dangerous substance is found does not constitute constructive possession. However, proximity to the drug may establish a pri-ma facie case of possession when colored by other evidence. State v. Bazley, 60 So.3d at 20. Factors to be considered in determining whether a defendant exercised dominion and control sufficient to constitute constructive possession include: (1) the defendant’s knowledge that illegal drugs were in the area; (2) his relations with the person found to be in actual possession; (3) the defendant’s access to the area where the drugs were found; (4) evidence of recent drug use by the defendant; (5) the existence of paraphernalia; and (6) evidence that the area was frequented by drug users. State v. Proctor, 901 So.2d at 482.
In State v. Morgan, 557 So.2d 977 (La.App. 4 Cir.1990), writ denied, 564 So.2d 317 (La.1990), the appellate court held that the evidence was sufficient to |nshow *1254 constructive possession by the defendant of contraband found in the trunk of the vehicle in which he was a passenger. In concluding that the defendant exercised dominion and control over the illegal substances, the court considered that the defendant had permission to use the vehicle where the contraband was found; the defendant and the owner of the vehicle had a personal relationship; the defendant was wearing a beeper and had an address book indicating that he may be involved in drug trafficking; and the defendant was observed stuffing objects under the front seat of the vehicle which were later identified as a small handgun and a small quantity of narcotics.
Likewise, in State v. Robbins, 43,129 (La.App. 2 Cir. 3/19/08), 979 So.2d 630, 639, the appellate court concluded that the evidence was sufficient to prove that the defendant driver had constructive possession of the marijuana found in the trunk of the car, even though the passenger testified at trial that the driver had no knowledge that he had purchased the marijuana and put it in the trunk. In finding constructive possession, the court noted that the trunk of the car was equally accessible by both occupants of the vehicle as they embarked on a trip from Texas to Florida. Further, the marijuana was not hidden in any manner to raise a strong inference that one party may have had the complete control over the drug to the exclusion of the other. The appellate court determined that the defendant’s guilty knowledge could be inferred from the fact that the passenger smelled of marijuana, establishing defendant’s direct involvement with the drug. Moreover, the court noted that the men both gave inconsistent details about their trip and their relationship to one another.
In the instant case, we likewise find that the evidence presented by the State was sufficient to show that defendant had constructive possession of the marijuana contained in the trunk of the vehicle she was driving. At trial, Sergeant Schilleci 112testified that he stopped the vehicle defendant was driving for a traffic violation. After observing the subject vehicle weaving and crossing the fog line on several occasions, Sergeant Schilleci believed that the driver may have been impaired. Upon stopping the vehicle, Sergeant Schilleci noticed that the driver, defendant, was very nervous, and that her hand was shaking when she handed him her license. Although typical to display some nervousness, Sergeant Schilleci testified that defendant displayed continued and excessive nervousness throughout the entire traffic stop. Defendant also provided Sergeant Schilleci with a rental agreement indicating that the vehicle had been rented by an absent third party which defendant was slow to identify. Further, when asked about their travel itinerary defendant told Sergeant Schilleci that they had made a quick trip to Houston, Texas, to check on her apartment.
During his testimony, the officer stated that the quick trip, excessive nervousness, and rental vehicle obtained by an absent third party were all indicators that someone might be transporting contraband or driving a stolen vehicle.[9] Sergeant Schille-ei then decided to speak with Cooks, who was seated in the front passenger seat of the vehicle. When asked the same questions as defendant regarding their travel itinerary, their stories contradicted one another. Cooks told Sergeant Schilleci that *1255 they had been in Baytown, Texas, visiting family. During their conversation, Cooks appeared excessively nervous and was breathing heavily. Additionally, Sergeant Schilleci detected an “overwhelming odor” of marijuana emanating from the vehicle. Cooks also turned over a firearm to Sergeant Schilleci when asked if there were any weapons in the vehicle. Moreover, the officer observed four cell phones, an odor neutralizer, and three juveniles in the vehicle. After advising defendant of her rights, she provided 11sSergeant Schilleci with her consent to search the vehicle where the marijuana and a bag containing defendant’s personal belongings were found. With regard to the odor of the marijuana, Sergeant Marie testified that when he checked the vehicle defendant was driving for other evidence, he smelled an odor of marijuana in the vehicle. Sergeant Marie further testified that when he was transporting the seized evidence, the odor of marijuana was so strong that he had to roll down the windows of his police unit and “Febreze” his back seat.
Both defendant and Cooks testified at trial that they had no knowledge of the marijuana in the trunk and that it did not belong to them. Rather, they claimed the drugs belonged to Jacques Rivers, a high school acquaintance. Defendant explained that she had borrowed Rivers’ truck to drive to Houston to check on her apartment and had asked Cooks to accompany her. They stopped in Baytown along the way to see family but had to turn around and come back before reaching Houston because defendant was called into work. Before starting their trip back to New Orleans, both women testified that Rivers called and offered to fill up his truck with gas for their trip back. The women then met Rivers at a gas station where Rivers decided he wanted to drive his truck, so they exchanged cars. According to both defendant and Cooks, they never looked, or went into the trunk of the car. Rather, Rivers placed defendant’s bag in the trunk for her. Both women testified that while following Rivers back to New Orleans, they never detected the odor of marijuana in the car.
In the present case, the jury obviously found the testimony of the State’s witnesses to be credible and rejected that of defendant and Cooks. The trier of fact may accept or reject, in whole or in part, the testimony of any witness. It is not the function of the appellate court to evaluate the credibility of witnesses, nor to | ^overturn the trial court on its factual determination of guilt. State v. Bazley, 60 So.3d at 21.
Based on the foregoing, we find that the evidence presented by the State was sufficient to establish defendant’s constructive possession of the marijuana contained in the vehicle’s trunk with her belongings. In particular, defendant’s behavior when pulled over and questioned by police, the inconsistent stories concerning their itinerary, the short turn-around trip, the four cell phones, the rental vehicle leased to an absent third party, and the air freshener, tend to support the conclusion that defendant and Cooks had constructive possession over the contraband found in the trunk of the vehicle. Additionally, evidence of defendant’s guilty knowledge may be inferred by the women’s inconsistent stories and the strong odor of marijuana present in the vehicle, as testified to by both Sergeant Schilleci and Sergeant Marie. Lastly, we note that defendant’s intent to distribute can be inferred by the large amount of marijuana seized in the trunk where defendant’s belongings were also found. As such, the State sufficiently proved the elements of the offense of possession with intent to distribute marijuana, and we find no error in the trial court’s *1256 denial of defendant’s motion for a new trial on the basis of insufficiency of the evidence.

ERROR PATENT REVIEW

We have also reviewed the record for errors patent in accordance with LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990).
Our review of the record reveals a double jeopardy violation.[10] The Double Jeopardy Clause of the United States Constitution and the Louisiana Constitution ^protects defendants from being punished or prosecuted twice for the same offense. United States Constitution, Amendment 5; Louisiana Constitution of 1974, Art. 1, § 15; see also LSA-C.Cr.P. art. 596. The Double Jeopardy Clause clearly “prevents an offender from being convicted of both the underlying offense for a 14:95(E) violation and the 14:95(E) violation itself.” State v. Sandifer, 95-2226 (La.9/5/96), 679 So.2d 1324, 1329. In State v. Thomas, 99-2219 (La.App. 4 Cir. 5/17/00), 764 So.2d 1104, writ denied, 00-1734 (La.6/22/01), 794 So.2d 780, the appellate court concluded that the defendant’s prosecution for both possession of cocaine with intent to distribute, pursuant to LSA-R.S. 40:967(C), and possession of a firearm while in possession of the same cocaine, pursuant to LSA-R.S. 14:95(E), violated the defendant’s double jeopardy rights. See also State v. Warner, 94-2649 (La.App. 4 Cir. 3/16/95), 653 So.2d 57, writ denied, 95-0943 (La.5/19/95), 654 So.2d 1089; and State v. Woods, 94-2650 (La.App. 4 Cir. 4/20/95), 654 So.2d 809, writ denied, 95-1252 (La.6/30/95), 657 So.2d 1035.
In the instant case, defendant was convicted of possession with intent to distribute marijuana, LSA-R.S. 40:966(A)(1), and possession of a firearm while in possession of that same marijuana, LSA-R.S. 14:95(E). Under the “same evidence” test, if evidence required to support a finding of guilt of one crime also supports a conviction for another offense, the defendant can be placed in jeopardy for only one of the two. State in Interest of S.L., 11-883 (La.App. 5 Cir. 4/24/12), 94 So.3d 822, 829. Employing this test, we find that the prohibition against double jeopardy was violated in this case. In particular, we find that the prosecution for possession of a firearm while in possession of marijuana required use of the same evidence presented against defendant under LSA-R.S. 40:966(A). In order to convict defendant of the weapons charge, the State was required to prove possession of a controlled dangerous substance. The one distinct act defendant 11ficommitted, the possession of marijuana, was the determinative factor in a successful prosecution of either offense. Without the possession of marijuana, either charge would have failed. State v. Sims, 44,123 (La.App. 2 Cir. 4/15/09), 7 So.3d 1288.
Where multiple punishments have been erroneously imposed in violation of double jeopardy, the proper appellate procedure is to eliminate the effect of the less severely punishable offense. State v. Garcia, 10-755 (La.App. 5 Cir. 5/10/11), 66 So.3d 24, 28. The less severely punishable offense in this case is possession of a firearm while in possession of a controlled dangerous substance, which carries a potential sentence of five to ten years, whereas possession of marijuana with the intent *1257 to distribute has a sentencing range of five to thirty years. See LSA-R.S. 14:95(E), 40:966(B)(3). Accordingly, we vacate defendant’s conviction and sentence for possession of a firearm while in possession of a controlled dangerous substance.
Our review further reveals that defendant was given an incomplete advisal regarding the post-conviction relief period under LSA-C.Cr.P. art. 980.8. Specifically, the commitment states that “defendant has 2 years to file post conviction relief after judgment of conviction becomes final.” The transcript provides that defendant was advised that she had “a two year prescriptive period in which to file for post conviction relief, which two years begins to run after the judgment of conviction have become final.” This Court has held that the failure to advise a defendant that the prescriptive period runs from the time his conviction and sentence become final is incomplete. State v. Grant, 04-341 (La.App. 5 Cir. 10/26/04), 887 So.2d 596, 598. By means of this opinion, we correct this error and inform defendant that no application for post-conviction relief, including an application for an out-of-time appeal, shall be considered if it is filed more than |17two years after the judgment of conviction and sentence have become final under the provisions of LSA-C.Cr.P. art. 914 or 922. State v. Davenport, 08-463 (La.App. 5 Cir. 11/25/08), 2 So.3d 445, 451, writ denied, 09-158 (La.10/16/09), 19 So.3d 473.
Our review further reveals that the trial court failed to impose the requisite probation fee under LSA-C.Cr.P. art. 895.1(E), which provides, in pertinent part:
E. When the court places any defendant convicted of a violation of the controlled dangerous substances law, R.S. 40:966 through 1034, on any type of probation, it shall order as a condition of probation a fee of not less than fifty nor more than one hundred dollars, payable to the Louisiana Commission on Law Enforcement to be credited to the Drug Abuse Education and Treatment Fund and used for the purposes provided in R.S. 15:1224.
Here, defendant was convicted of LSA-R.S. 40:966 and placed on probation. Given that defendant was placed on probation, the trial court was required to order as a condition of probation a fee of not less than fifty nor more than one hundred dollars. Accordingly, we remand the matter with instructions to the trial court to impose the mandatory fee on defendant pursuant to LSA-C.Cr.P. art. 895.1(E).
Accordingly, for the reasons set forth herein, we affirm defendant’s conviction and sentence for possession with intent to distribute marijuana but vacate her conviction and sentence for possession of a firearm while in possession of marijuana. We remand the .matter to the trial court with instructions to impose the mandatory probationary fee pursuant to LSA-C.Cr.P. art. 895.1(E).

AFFIRMED IN PART, VACATED IN PART, AND REMANDED

. The Pre-Sentence Investigation indicates that defendant was not eligible for Intensive Incarceration/ Intensive Parole Supervision pursuant to LSA-R.S. 15:574.4.4 due to her conviction for the LSA-R.S. 14:95 E firearm offense.

. Co-defendant, Glenetraveronesse Cooks, was charged in the same bill of information with the same two counts. Drewery and Cooks proceeded to trial together. Cooks has also appealed her convictions.

. When Sergeant Schilleci approached Cooks, she was speaking to an unidentified male on the phone.

. The handgun was located inside a gun case.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. At trial, Cheryl Blades, an expert in the field of chemical analysis of marijuana, testified that she analyzed the evidence seized in con *1251 nection with this case. She testified that the gross weight of the evidence was approximately thirty-seven pounds and that it tested positive for marijuana.

. Defendant explained that Rivers knew her car was not working, and he let her borrow his truck to travel to Houston.

. No explanation was given regarding the reason for Rivers’ presence in Baytown. On cross-examination, defendant testified that she did not know why Rivers was in Texas, and that she did not know he was going to be there until she received a phone call from him asking if she needed him to fill the truck up with gas.

. There were also three juveniles in the car, which Schilleci noted is an indicator as well, "because a lot of drug couriers will take juveniles and put them in the vehicle in an attempt to throw law enforcement off.”

. A violation of double jeopardy apparent on the face of the record is reviewable as error patent. State v. Thomas, 99-2219 (La.App. 4 Cir. 5/17/00), 764 So.2d 1104, 1108, writ denied, 00-1734 (La.6/22/01), 794 So.2d 780. See also State ex rel. Adams v. Butler, 558 So.2d 552, 553, n. 1 (1990).