SUSAN M. CHEHARDY, Chief Judge.
|aOn appeal, James Hutchinson challenges his convictions for second degree murder and unauthorized use of a motor vehicle. For the following reasons, we affirm those convictions.

Procedural history

On January 24, 2013, a Jefferson Parish Grand Jury indicted defendant,. James Hutchinson, on one count of . second degree murder, in violation of La. R.S. 14:30.1, and one count of unauthorized use of a motor vehicle, in violation of La. R.S. 14:68.4. On March 10, 2015, trial commenced. After two days of testimony, the twelve-person jury found defendant guilty as charged on both counts. On April 8, 2015, the trial judge sentenced defendant, for second degree murder, to life imprisonment without" benéfit of parole, probation, or suspension of sentence and, for unauthorized use of a motor vehicle, to five years at hard labor, to run concurrently. Defendant’s motion for appeal was granted that day.

Facts

On September 28, 2012, King Honoré was found dead in Room 124 of the La-Quinta Inn on the South'1-10 Service Rd in Metairie. According to Dr. | ..¡Marianna Eserman, the expert forensic pathologist, Mr. Honore’s death was' a homicide caused by manual and ligature strangulation. Moreover, the force exerted during the strangulation was substantial enough to fracture the victim’s hyoid bone,[1] which is a nare finding seen in only about 20% of the cases of manual strangulation. Finally, the pathologist determined that he had been dead for about two days.
Détective Rhonda Goff of the Jefferson Parish Sheriffs Office Homicide Division was the lead investigator on this case. Initially, Detective Goff observed that Mr. Honoré was found unclothed, lying prone on the floor of the room. Mr. Honoré had bruises and scratches on his face and neck. He also had skin under his fingernails, Which were not clipped short. Further, there was blood bn the floor and bedding near Mr. Honoré that was indicative of a struggle before his death.
. During her investigation, Detective Goff learned that the last keyed entry by a guest into Mr. Honore’s room was at 10;Q9 p.m. on Wednesday, September 26, 2012. Further, the housekeeper reported to the manager, on Thursday, September 27, 2012,' that there was a man “sleeping naked” on the floor in Room 124 but the manager thought the man was probably drunk so took no action. On Friday, September 28, 2012, when a second housekeeper reported the man on the floor, the manager reported the incident. Detective Goff also learned that Mr. Honore’s rental car was not in the motel’s parking lot so she reported the car as stolen.
On October 2, 2015, DNA analysis of swabs from the victim showed a. match to ■James Hutchinson. At trial, David Cox, an expert in forensic DNA analysis for the Jefferson Parish Sheriffs Office stated that a large amount of tissue, which was about 10 times larger than a typical sam- *1268 pie, was found under the |4fingernails of the victim’s right hand. The DNA in that tissue matched, James Hutchinson with a probability greater than 1 in 100 billion. DNA was also, found under the fingernails of the victim’s left hand, which, with the same probability, was consistent with both the victim and James Hutchinson’s DNA. Further, the swab of the bite wound on the victim’s cheek contained James Hutchinson’s DNA with a probability of greater than 1 in 100 billion. Finally, the swab of the lacerations on the .victim’s neck contained James Hutchinson’s DNA with a probability of greater than 1 in 100 billion.
On October 2, 2015, Detective Goff learned that Mr. Hutchinson had been arrested on Friday, September 28, 2012 in St. John the Baptist Parish on unrelated charges and remained in custody there. An' official from the St. John Parish Sheriffs Office provided Detective Goff with a copy of the booking photograph taken of Mr. Hutchinson on September '28, 2012, which reflected bruises and partially-healed cuts on his face. Further, the arresting deputy testified that the cuts were not consistent with injuries that had just been inflicted.
On October 3,2015, Detective Goff interviewed James Hutchinson at the St. John the Baptist Parish Sheriffs Office. Mr. Hutchinson gave' two conflicting statements. In his first statement, Mr. Hutchinson admitted that he had known the victim for rnáhy years as they were both from LaPlace. Mr. Hutchinson also admitted going to meet the victim at LaQuin-ta “last Wednesday” to get some Vodka but could not recall the name of the person that drove him to the motel or how he returned to LaPlace from the motel in Metairie.
After the first statement, Detective Goff, pursuant to a search warrant, obtained a buccal swab from Mr. Hutchinson to compare to the DNA evidence obtained from the victim. Once Mr. Hutchinson was informed his DNA was found on the victim, he made a second statement to explain his skin,under the victim’s |snails. In the second statement, Mr. Hutchinson said the victim may have “gotten blood from me under his fingernail” because Mr. Hutchinson cut himself “one day” and the victim had “rubbed it and messed witfsic ] it.” Hutchinson denied being involved in any physical altercation with the victim but rather attributed his current bruises and scratches to two separate altercations: one between himself and his girlfriend and another between" himself and “a couple of dudes” at the LaPlace projects. He also denied that he had gone to meet Mr. Hon-oré at a motel at any time. At that point, Detective Goff arrested-James Hutchinson for the homicide of King Honoré.
On October 5, 2012, the victim’s rental car was found at the rear of the parking lot of the Winn Dixie Supermarket at 179 Belle Terre in LaPlace. Video surveillance of that area reflects that the vehicle was driven by a shirtless African-American man, who parked the car at 12:26 a.m. on Thursday, September 27, 2012. The video was grainy and the driver was wearing a hat so there was no clear picture of the driver’s face. Detective Goff pointed out, however, that the car was parked only three-tenths of a mile from the home address that James Hutchinson gave in his statements and where he was arrested on Friday, September 28,2012.
After hearing testimony and evidence, the twelve-member jury found defendant guilty as charged on.one count of second degree murder and one count of unauthorized use of a motor vehicle. This appeal follows.

Law and Argument

On appeal, defendant raises three assignments of error: first, the evidence was insufficient to support this conviction; sec *1269 ond, a mistrial should have been declared when Erica Lewis was dismissed from the jury over counsel’s objection; and, third, reversible error occurred when juror Amber Bonura was not dismissed for cause.
|fiIn his first assignment of error, defendant contends that the evidence was insufficient to support both his second degree murder conviction and unauthorized use of a motor vehicle conviction. He argues that not every reasonable hypothesis of innocent activity had been- eliminated. While he concedes that ■his DNA was found on the victim, he points out that someone else could have committed.- the murder. He argues-that the- State was required to negate the possibility that someone else murdered the victim and took his car. Additionally, he submits that the victim’s car was never checked for fingerprints, and while there was-the surveillance video, it did not show the identity of the driver. Accordingly, he contends that his convictions were improper.
The constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 660 (1979), is whether after viewing- the evidence in the light most favorable to - the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See State v. Ortiz, 96-1609 (La.10/21/97), 701 So.2d 922, 930, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998); State v. Bailey, 04-85 (La.App. 5 Cir. 5/26/04), 875 So.2d 949, 954-55, unit denied, 04-1605 (La.11/15/04), 887 So.2d 476, cert. denied, 546 U.S. 981, 126 S.Ct. 554, 163 L.Ed.2d 468 (2005). Both the direct and circumstantial evidencé must be suffi cient to support-the conclusion that the defendant is guilty beyond a reasonable doubt. State v. Harrell, 01-841 (La.App. 5 Cir. 2/26/02), 811 So.2d 1015, 1019.
Circumstantial evidence is evidence of' facts or circumstances from which one might infer or conclude, according to reason and common experience, the existence of other connected facts. State v. Kempton, 01-572 (La.App. 5 Cir. 12/12/01), 806 So.2d 718, 722. The rule as to circumstantial evidence is: assuming 17every fact to be proved that the evidence tends to prove, in order-to. convict, it must exclude every reasonable hypothesis of innocence. La. R.S. 15:438.
■ On appeal, the reviewing court does not determine if another 'possible hypothesis suggested by the deféndant could afford an exculpatory explanation of the events. Instead, the appellate court must evaluate the evidence in the light most favorable to the State and determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. State v. Durand, 07-4 (La. App. 5 Cir. 6/26/07), 963 So.2d 1028, 1034, writ, denied, 07-1545 (La.1/25/08), 973 So.2d 753. The reviewing court must not impinge on the jury’s finding of fact, in a criminal case, except to the extent necessary to: guarantee constitutional due process. State v. Mitchell, 99-3342 (La.10/17/00), 772 So.2d 78, 83.
An appellate court’s primary function is not to re-determine the defendant’s guilt or innocence in accordance with its appreciation of the facts and credibility of the witnesses. Rather, the function is to ré-view- the evidence in the -light most favorable to the prosecution and determine whether there is sufficient evidence to support the jury’s conclusion. State v. Preston, 15-306 (La.App. 5 Cir. 10/28/15), 178 So.3d 207, 214 (citing State v. Banford, 94-883 (La.App. 5 Cir. 3/15/95), 653 So.2d 671, 677). The credibility of,witnesses is within the sound discretion- of the trier of fact, who may accept or reject, in whole or in *1270 part,- the testimony of any witness;’ the credibility of the witnesses will not be reweighed on appeal. Id.; State v. Rowan, 97-21 (La.App. 5 Cir. 4/29/97), 694 So.2d 1052, 1056.

Second Degree Murder .

Under La. R.S. 14:30.1, second degree murder is defined as the killing of a human being when the offender has specific intent to kill or to inflict great bodily harm. To support a conviction for second degree murder, the State had to prové I «that defendant had the specific intent to kill or to inflict great bodily harm. Specific intent is “that state of mind which, exists when the. circumstances indicate that the offender actively désired the prescribed criminal consequences to follow his act or failure to act.” La. R.S. 14:10(1). The determination of specific intent is a question of fact. State v. Gant, 06-232 (La. App. 5 Cir. 09/26/06), 942 So.2d 1099, 1111, writ denied, 06-2529 (La.5/04/07), 956 So.2d 599. Specific intent may be inferred from the circumstances and actions of the defendant, and the intent to" kill or to inflict great bodily harm may be inferred from the extent and severity of the victim’s injuries. State v. Keating, 00-51 (La.App. 5 Cir. 10/18/00), 772 So.2d 740, 743, writ denied, 00-3150 (La.10/12/01), 799 So.2d 494.
In addition to proving the statutory elements of the charged offense at trial, the State is required to prove the defendant’s identity as the perpetrator. State v. Page, 08-531 (La.App. 5 Cir. 11/10/09), 28 So.3d 442, 447, writ denied, 09-2684 (La.6/4/10), 38 So.3d 299. Where the key issue is identification, the State is required to negate any reasonable probability of misidentification in order to carry its burden of proof. Id.
In the instant case, we find that a rational trier of fact could have found beyond a reasonable doubt that the State proved the essential elements of the crime of second degree murder. First, the State presented- evidence that the victim was killed by both manual and ligature strangulation. The evidence showed that the victim’s hyoid- bone was broken, which demonstrates a significant amount of force for a “prolonged period of time” was exert-, ed during the- manual strangulation. We find- that the evidence was sufficient , to support the jury’s finding of specific intent to kill or inflict great bodily harm.
Next, defendant admitted that he was -in the motel room -with defendant- on the night of Wednesday, September 26, 2012. More importantly, defendant’s |aDNA was found on multiple places on the victim’s body. Notably, the swab, taken irom the victim’s own hand yielded a substantial amount of tissue containing DNA matching only the defendant. Further, DNA taken from a bite mark on the victim’s eheek was matched to defendant. We find that the evidence was sufficient to support the jury’s finding that the defendant was the perpetrator.
In reaching its verdict, the jury obviously believed the testimony from the State’s witnesses rather than-the conflicting statements given- by defendant to the police. The credibility of witnesses presenting conflicting testimony on factual matters is within the- sound discretion of the trier of fact. State v. Jones, 08-20 (La.App. 5 Cir. 4/15/08), 985 So.2d 234, 240. In light of.the foregoing, we find that a rational trier of fact could have found that the evidence was sufficient under the Jackson standard to support defendant’s second degree murder conviction. .

Unauthorized Use of a Motor Vehicle.

Under La. R.S. 14:68.4, unauthorized use of a motor vehicle is defined as the intentional taking or use of a motor vehicle which belongs to another, either without the other’s consent or by means of fraudu *1271 lent conduct, practices, or representations, but without any intention to deprive the other of the motor vehicle permanently.
 The Louisiana Supreme Court clarified that unauthorized use of a motor vehicle does not specifically require the titled owner of the vehicle to testify and/or identify the vehicle. The State can .meet its burden of proof by proving that the defendant was aware that he was driving a stolen vehicle, “as we can presume that there can be no legitimate permission given to drive a stolen vehicle.” State v. Macon, 06-481, p. 8 (La.6/1/07), 957 So.2d 1280, 1286.
In this case, the State introduced evidence that the victim rented a vehicle from Enterprise, and he was the only authorized driver.. The car was not in the Imparking lot of the motel when the police investigated. Further, video surveillance footage from the Winn Dixie in LaPlace showed that a shirtless African-American male drove the victim’s rental car into the parking lot at 12:26 a.m. on September 27, 2012. The location where the car was left was three-tenths of a mile from defendant’s residence. Although the video did not show the suspect’s face, the. suspect was seen.leaving the car and walking in the direction of defendant’s residence. Furthermore, it was Detective Goffs opinion that the suspect and defendant had the same body type.
. In rendering a unanimous verdict on this count, the'jury found- that defendant stole the rental car in question. Upon review, we find that, after viewing all the evidence in the light most favorable to the prosecution, the jury could have found beyond a reasonable doubt that the State presented sufficient evidence to support a finding that defendant was. guilty of unauthorized use of a motor vehicle.
Based on the foregoing, we find that the State presented sufficient evidence ,to support both of defendant’s convictions; This assignment lacks merit.
In his second assignment of error, defendant contends that the trial judge erred in failing'to grant a mistrial when the trial judge dismissed Erica Lewis from the jury over counsel’s objection. . Specifically, defendant argues that the trial judge erred in granting the juror’s challenge for cause where she did not demonstrate physical or mental illness but only nervousness. Because she was dismissed, defendant contends that he was severely prejudiced and his conviction should be reversed.
A mistrial is a drastic remedy and, except when mandatory, is warranted only when the defendant has, suffered substantial prejudice such that he is incapable of receiving a fair trial. State v. Car-mouche, 01-0405 (La.5/14/02), 872 So.2d 1020, 1035; State v. Johnson, 03-620 (La. App. 5 Cir. 10/28/03), 860 So.2d 180, 186, writ denied, 03-3171 (La.3/19/04), 869 So.2d 849. Whether a mistrial should be granted is within the trial court’s, sound discretion, and denial of a mistrial motion will not be disturbed on appeal absent an abuse of that discretion. State v. Ratcliff, 98-101 (La.App. 5 Cir. 2/23/99), 731 So.2d 356, 363, writ denied, 99-1112 (La.9/3/99), 747 So.2d 541.
To qualify to serve on a jury, a person must “not be under interdiction or incapable of serving as a juror because of. a mental or . physical infirmity_”, -La. C.Cr.P. art. 401(A)(4); A.prospective petit juror may be disqualified by -the court when- doubt exists as to that juror’s competency to serve in the case. La. C.Cr.P. art. 78’7. Additionally,:La.C.Cr.P. art. -797 provides that “the state or the defendant may challenge a juror for cause on the ground that the juror lacks a qualification required by -law.”.. Further, La.C.Cr,P. art. 796 provides that “if it is discovered after a juror has been accepted and sworn, *1272 that he is incompetent to serve, the court may, at any time before the first witness is sworn, order the juror removed and the panel completed in the ordinary course.”
In this case, the transcript reflects that during the selection of the fourth panel, the attorneys approached and had a bench conference wherein the court’s bailiff reported that juror, Erica Lewis, wanted to speak to the judge. At this point, Erica Lewis had been accepted by both the State and defendant. The panel had not been sworn, however, as neither the twelfth juror nor the alternates had been selected.
When the trial judge spoke with Ms, Lewis, she stated that she was “just afraid ...' of the whole situation.” She further' stated that she was “really nervous” and agreed that her “emotional state would prevent [her] from paying attention to the case,” and “hearing the evidence.” The trial judge excused her for cause on the basis that Ms. Lewis was in “a very excitable, emotional state” and that “her [ 12mental situation [whs] such that she’s not able to pay attention to the evidence or listen attentively to the courtroom proceedings.”
Defense counsel objected to her being excused stating, “she doesn’t seem that upset to mie ... the subsequent juror that I cut that I would have probably kept if I would have known that.she wasn’t going to be part of the panel.” Defense counsel then moved for a mistrial, “considering what has taken place with Ms. Lewis being struck for cause.” The State pointed out that the panel had not been sworn so the State - could have backstruck Ms. Lewis and defense counsel would be in the same position “with two jurors left to select and one cut.”
Defense counsel responded that, had Ms. Lewis been excused earlier, he may not have chosen to strike the three jurors he did subsequently. The court denied the motion for mistrial as “mistrial is a drastic remedy that should be granted only when the defendant suffers substantial prejudice, that’s been deprived of any reasonable expectation of a fair trial,” and that “this occurrence doesn’t reach that level.”
In State v. Mohamed, 96-845 (La.App. 5 Cir. 9/17/97), 700 So.2d 881, the defendant argued that the trial court erred in granting the State’s challenge for cause of a juror already accepted and sworn. The juror testified he did not want to serve on the jury, and that he would not want a juror in his frame of mind on the jury. The trial judge dismissed the juror and thereafter completed the selection of the remaining six jurors. This Court found that the trial judge did not abuse her discretion in determining that the juror was unfit and excusing him before the first witness was sworn pursuant to La.C.Cr.P. art. 796. See also State v. Taylor, 545 So.2d 1237 (La.App. 2 Cir.1989), judmt amended on other grounds, 551 So.2d 1332 (La.1989) (where the juror’s testimony was that he was unable to concentrate on the case, the trial judge’s ruling removing the juror was not an |iaabuse of discretion); State v. Robertson, 518 So.2d 579 (La.App. 1 Cir. 12/22/87) (La.C.Cr.P. art. 796 was controlling and that the trial court did not err in denying the defendant’s motion for a mistrial); State v. Polzin, 536 So.2d 667 (La.App. 3 Cir.1988) (where the appellate court affirmed the trial court’s denial of a mistrial when two jurors, who had been empaneled and sworn, were excused on the grounds of illness and/or hardship).
In this case, before the jury panel was sworn, the trial judge dismissed Ms. Lewis based on her inability to concentrate and hear the evidence. Upon review, we find no abuse of the trial court’s discretion in denying defendant’s motion for mistrial. This assignment of error lacks merit.
In his third assignment of error, defendant argues that reversible error occurred when juror Amber Bonura was not dis *1273 missed for cause. Specifically, defendant argues that prospective juror Amber Bon-ura should have been excused because she was biased for the State due to her employment . with the St.. Charles Parish Sheriffs. Office. Defendant contends that the trial court erroneously denied his challenge for cause, which, caused him to be prejudiced, and, thus, was reversible error.
In its brief, the State points out that the record reflects that defendant used 11 of his 12 peremptory challenges an'd is, therefore, barred from appellate review of a claim of an improperly denied challenge for cause.
The Sixth Amendment to' the United States Constitution guarantees the accused the right to trial by an impartial jury. State v. Munson, 12-327 (La.App. 5 Cir. 4/10/13), 115 So.3d 6, 12, unit denied, 13-1083 (La.11/22/13), 126 So.3d 476. Further, La. Const. Art. I, § 17. guarantees the accused the right to full voir dire examination of prospective jurors and the right to challenge those jurors peremptorily. .
[ 14Jurors may also be challenged for cause based on the grounds set forth in La.C.Cr.P. art. 797.[2] A trial court is vested with broad discretion in ruling on challenges for cause, and its rulings will be reversed only when a review" of the voir dire record as a whole reveals an abuse- of discretion. State v. Campbell, 06-0286 (La.5/21/08), 983 So.2d 810, 858, cert. denied, 555 U.S. 1040, 129 S.Ct. 607, 172 L.Ed.2d 471 (2008); State v. Leger, 05-0011 (La.7/10/06), 936 So.2d 108, 155, cert. denied, 549 U.S. 1221, 127 S.Ct. 1279, 167 L.Ed.2d 100(2007).
In order to prove reversible error warranting reversal of a defendant’s conviction, the defendant must show (1) the erroneous denial of a challenge for cause; and (2) the use of all of his peremptory .challenges. State v. Jones, 03-3542 (La.10/19/04), 884 So.2d 582, 588-89. When a defendant uses all of his peremptory challenges, a trial court’s erroneous ruling on .a challenge; for cause which deprives him of one of his peremptory challenges constitutes a substantial violation of his constitutional and statutory rights. In this situation, prejudice is presumed and the conviction and sentence must be reversed., Id. at 588,'
In the instant case, defendant was tried and convicted for" a crime necessarily punishable by imprisonment- at hard labor. See La. R.S. 14:30.1. Under La.C.Cr.P, art. 799,[3] defendant was entitled to twelve peremptory challenges.
*1274 |15Our review of the voir dire transcript reveals, as the State correctly points o.ut> that defendant did not exhaust all of his peremptory challenges; he used only eleven of his peremptory challenges. As a result, defendant is precluded from appellate review of this claim. See State v. Koon, 96-1208 (La.5/20/97), 704 So.2d 756, 767, cert. denied, 522 U.S. 1001, 118 S.Ct. 570, 139 L.Ed.2d 410 (1997) (declining to consider the defendant’s claim that the trial court erred in denying defense challenge for' cause due to the defendant’s failure to exhaust peremptory challenges); State v. Milton, 13-672 (La.App. 5 Cir. 5/14/14), 142 So.3d 157, 169 (where this Court'also declined to consider the defefi-dant’s claim that the- trial' court erred in denying his challenges for cause as to four prospective jurors due to the defendant’s failure to exhaust his peremptory challenges). This assignment of error lacks merit.

Errors patent

Finally, as is our practice, we have reviewed the Record for errors patent, according to La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). Our review reveals that the trial court failed to properly notify defendant of the two-year prescriptive period for filing an application for post-conviction relief, as required by La.C.Cr.P. art. 930.8(C). In this case, the transcript reflects that the trial judge provided defendant with an incomplete advisal that defendant had “two years in which to file post-conviction relief.” State v. Grant, 04-341 (La.App. 5 Cir. 10/26/04), 887 So.2d 596, 598. By means of this opinion, we correct that error and inform defendant that “no application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of [La. C.Cr.P.-] Article 914 or 922.... ” State v. Drewery, 12-236 (La.App. 5 Cir. 1/30/13), 108 So.3d 1246; State v. Davenport, 08-463 (La.App. 5 Cir. 11/25/08), 2 So.3d 445, 451, writ denied, 09-158 (La.10/16/09), 19 So.3d 473.

Conclusion

Based on the foregoing, we find no merit in defendant’s assignments of error. Accordingly, defendant’s convictions and sentences are affirmed.

AFFIRMED

. Dr. Eserman testified that the hyoid bone sits "very high” in the neck. Further, fracturing of the hyoid is not seen in ligature strangulation and rarely seen in manual strangulation because it requires "a great amount of force to be placed on the neck for a prolonged period of time” to fracture the bone.

. La.C.Cr.P. art. 797 provides:
The state or the defendant may challenge a juror for cause on the ground that;
(1) The juror lacks a qualification required by law;
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to -a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
(3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict;
(4) The juror will not accept the law as given to him by the court; or
(5) The juror served on the grand jury that found the indictment, or on a petit jury that once tried the defendant for the same or any other offense.

. In trials of offensés,punishable necessarily by imprisonment at hard, labor, each defendant shall have twélve peremptory challenges. In all other cases, except those punishable by death, each defendant shall have six peremptory challenges, See La.C.Cr.P. art. ,799. Defendant was also tried and convicted of unauthorized use of a motor vehicle, a violation of La. R.S. 14:68.4, which is not an offense *1274 punishable necessarily by imprisonment at hard labor.