ROLAND L. BELSOME, Judge.
|! Defendant Derrick A. Dotson appeals his 2014 conviction and sentence for forcible rape, for which he was adjudicated a third-felony habitual offender and sentenced to the mandatory term of life imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence. For the reasons that follow we find that the trial court’s erroneous denial of the defendant’s challenge for cause requires the reversal of the defendant’s conviction.

Procedural History

The defendant Derrick A. Dotson was charged by grand jury indictment in Count 1 with the aggravated rape of K.T.; in Count 2 with the aggravated kidnapping of K.T.; in Count 3 with the aggravated rape of H.B. and in Count 4 with the aggravated kidnapping of H.B.[1]
The defendant was tried as to Count 1 and Count 3. After trial, the twelve-person jury returned a verdict of guilty of forcible rape on Count 3 but was unable to reach a verdict on Count 1, whereupon the trial court declared a mistrial as to that count.[2]
^Subsequently, the trial court denied defendant’s motion for a new trial and conducted a habitual offender hearing. Initially, the trial court sentenced him to serve forty years at hard labor. Later, the trial court adjudicated the defendant a third-felony habitual offender, vacated his original sentence, and resentenced him to life imprisonment at hard labor, without the benefit of parole, probation, or suspension of sentence.

Facts of the Case

For the purposes of this opinion only a brief synopsis of the underlying facts of the case are necessary.
In January of 1994, K.T. reported to the New Orleans Police Department (NOPD) that she had been sexually assaulted. At that time, she gave a statement to the investigating officer, Detective Debbie Coffee, and underwent a sexual assault exam. K.T. related to the officer the events that transpired. She stated that while crossing the street in Eastern New Orleans, a man she recognized as someone with whom her mother had worked with at one time summoned her to his vehicle.[3] When she approached she noticed a gun in his lap. He directed her to get into the car and drove to a wooded area. Still in possession of the gun, he forced K.T. to engage in sexual intercourse. He later dropped her off near where he had initiated the encounter. *81 The police investigation did not lead to a suspect. ■
In February of 1996, H.B. reported to the NOPD that she had been ¡- sexually assaulted. Detective Alan Gressett interviewed H.B. and she was transported to the l.qhospital where she underwent a sexual assault exam. In her interview with Det. Gressett, H.B. explained that her-at-' tacker had appeared at her home earlier in the day. He knocked on the,-door and asked for H.B.’s brother. Her brother recognized the man. as someone who had come to the door previously asking for money.[4] The man claimed that he was there to thank H.B.’s brother for the money. Shortly thereafter her brother left for work. H.B. was home alone and the, man returned. This time he claimed to be locked out of his house and asked H.B.,to place a call for him. The phone number did not work and she returned to the door to inform the man. At that time, he forced himself into the home' and sexually assaulted H.B. Like in KT.’s case, the investigation did not yield a suspect.
In 2010, NOPD Det. Decynda Barnes was assigned to the NOPD Cold Case Homicide Division. At that time, the division was investigating unsolved rape cases. She ran the DNA -collected from the victims’ through CODIS and received a DNA letter identifying the DNA match. In both the case involving K.T. and the one involving H.B., the DNA match was to Derrick Dotson. She contacted the victims, generated a police report for the cases, and secured arrest warrants in both cases.
As the procedural history states, the defendant was tried and convicted of the forcible rape of H.B., but the jury was unable to reach -a verdict in the forcible rape of K.T. At trial, the defendant testified -and maintained that he had been in romantic relationships with both K.T. and H.B. He further stated that the sexual encounters were consensual.

14Assignments of Error

. On appeal, the defendant raises two assignments of error. First, he maintains that the trial court erred in denying his challenge for cause of a prospective juror. Second,.the defendant argues that the trial court abused its discretion in refusing to grant defenclant’s motion for mistrial regarding the State’s, DNA expert’s testimony.

Assignment of Error Number One

In his first assignment of error, the defendant argues that the trial court erred in denying his challenge for cause of a prospective juror on the grounds that she could not be a fair and impartial juror. More specifically, during voir dire it was determined that the prospective juror’s mother had' been raped and murdered. When asked by the trial court whether the fact that her mother had been raped and murdered would have any bearing on her ability to be a fair and impartial juror in the case, the prospective juror replied: “Yes, it might.” No further questioning was conducted of the prospective juror on that issue.
Louisiana Constitution article I, § 17 guarantees to a defendant the right to full voir dire examination of prospective jurors and the right to challenge jurors peremptorily.. In trials of offenses necessarily punishable by imprisonment at hard labor, such as in the present case, each defendant shall have twelve peremptory challenges, and the State shall have twelve for each defendant.[5] Additionally, to ensure a fair *82 and impartial trial, the State and defendant can challenge a juror for cause.[6].
 '|BWhen a defendant uses all twelve of his peremptory challenges, a trial court’s erroneous. ruling on a defendant’s challenge for cause that results in the deprivation of one of his peremptory challenges constitutes a substantial violation of his constitutional and statutory rights, requiring reversal of his conviction and sentence.[7] Prejudice is presumed when a defendant’s challengé for cause is erroneously denied and he has exhausted all of his peremptory challenges.[8] Accordingly, to establish reversible error in the denial of one of his challengesfor cause, a defendant must show: (1) that he exhausted all of his peremptory challenges; and (2) that! the trial court erred in refusing to grant his challenge for cause.[9]
In this case, the defendant exhausted his peremptory challenges, thus the issue is whether the trial court erred when it denied his challenge for cause. Determinations on excluding a prospective juror for cause are made on a case-by-case basis.[10] Additionally, this Court recognizes that a - trial court is vested with broad discretion in ruling on challenges for cause, and its ruling will only be reversed when a review of the voir dire as a whole reveals an abuse of discretion.[11] .
IsOn appeal, the defendant maintains that the prospective juror at issue expressed her inability to be impartial, establishing justification for a challenge for cause in accordance with La.C.Cr.P. art. 797. The record is clear that when asked the routine question by the court as to whether she or a close friend or relative had ever béen a crime victim, the prospective juror replied that her mother had been raped and murdered. As previously stated, when asked whether that event would have any bearing on her ability to be a fair and impartial juror in the case, she replied: “Yes, it might.” Thereafter, neither the trial judge, the State, nor defense counsel questioned the prospective juror any further concerning her answer.[12]
The record further reflects that thé defendant subsequently challenged the prospective juror for cause. When the trial court asked the nature of the cause for which he was challenging the prospective juror, the defense counsel stated “her mother was murdered and raped.” The trial court declared that that was not' *83 “cause.” Defense counsel began to reply, “[s]he said that would: — ,” but before he could finish his statement the trial court cut him off,- stating: “No, she didn’t.” Defense counsel replied: “Yes, she did.” Ultimately, the defendant had. to use a peremptory challenge to excuse the prospective juror and thereafter exhausted his remaining peremptory challenges.
When a juror expresses a predisposition as to the outcome of a trial, a challenge for cause should be granted.[13] If after subsequent questioning, or ^rehabilitation, the juror exhibits the ability to disregard previous views and make a decision based oh the evidence presented at trial, the challenge is properly denied.[14] When assessing whether a challenge for cause should be granted, the district judge must look at the juror’s responses during his or her entire testimony, not just isolated answers.[15]
The State relies heavily on State v. Rob: inson, in support .of the trial court’s denial of .the challenge for cause.[16] In Robinson, a prospective juror stated in voir dire that she did not know whether she could be impartial in a second degree murder prosecution because three of her children had been victims of crimes. This Court found that a review of the voir dire in its entirety “did not reveal facts from which bias, prejudice, or inability to render judgment according to law might be reasonably' implied”.[17] That is what distinguishes this case from Robinson.
The facts of this case are more on point ■with State v. Holmes.[18] The defendant in Holmes was charged with aggravated rape, aggravated kidnapping, and aggravated crime against nature. This Court found that a prospective juror, who could not assure the court that her husband’s kidnapping would not affect her judgment in the case, was not “impartial.”[19] Likewise, in this case, the prospective juror’s past experience impacts her ability to be impartial. '•
I «This Court appreciates that a prospective juror’s seemingly prejudicial response is not grounds for an automatic grant of a challenge for cause, and a trial court does not abuse its discretion when denying the challenge, if after further questioning the potential juror demonstrates a willingness and ability to decide the case impartially according to the law and evidence.[20] Unfortunately, we do not have the benefit of further questioning to determine that the potential juror possessed the willingness and ability to decide the case impartially according to the law and evidence. The only indicator we have regarding whether her mother’s rape and murder would have an impact on her ability to be impartial in the defendant’s prosecution for forcible rape is an affirmative response of “yes, it might.” Additionally, when the defendant raised the challenge for cause, the trial court did not allow a full recitation of the prospective juror’s response. Moreover, the transcript reflects that the trial court was adamant that the prospective juror did not say anything that would denote her *84 inability to be impartial. In reviewing this prospective juror’s complete voir dire testimony, bias, prejudice, or the inability to render judgment according to law can be reasonably implied. Thus, we find that the trial court abused its discretion in denying the challenge for cause.
Accordingly, the defendant’s conviction is reversed and the case is remanded to the trial court for further proceedings.[21]
REVERSED AND REMANDED
LOBRANO, J., dissents.
LOBRANO, J., dissents.
hi respectfully dissent.

. The aggravated rape charges are violations of La. R.S. 14:42 and the aggravated kidnapping charges are violations of La. R.S. 14:44.

. Ultimately, Counts 1, 2, and 4 were nolle prosequied.

.Although, K.T. recognized the defendant she did not know his name. .

. On that occasion, H.B.’s brother had given the man five dollars.

. La.C.Cr.P. art. 799.

. La.C.Cr.P. Art. 797 — Challenge for Cause reads in pertinént part:
The state or the defendant may challenge a juror for cause on the ground that:
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence.

. State v. Juniors, 2003-2425, p. 7-8 (La.6/29/05), 915 So.2d 291, 304; State v. Fields, 2013-1493, p. 22 (La.App. 4 Cir. 10/8/14), 151 So.3d 756, 771.

. State v. Carmouche, 2001-0405, p. 8 (La.5/14/02), 872 So.2d 1020, 1028; State v. Kirk, 2011-1218, p. 10-11 (La.App.. 4 Cir. , 8/8/12), 98 So.3d 934, 941.

. Carmouche, supra; Juniors, 2003-2425, p. 8, 915 So.2d at 305.

. State v. Ballard, 98-2198 (La.10/19/99), 747 So.2d 1077, 1080.

. State v. Anthony, 98-406, p. 22 (La.4/11/00), 776 So.2d 376, 391; State v, Brown, 2012-0626, p. 14 (La.App. 4 Cir. 4/10/13), 115 So.3d 564, 574,

. ' Later, when the voir dire panel as a group was asked by the State why a victim might not come forward in a case such as the present one, the prospective juror volunteered: "There’s shame involved.”

. State v. Lindsey, 2006-255, p. 3 (La. 1/17/07), 948 So.2d 105, 107-08.

. Id.'

. Id.

. State v. Robinson, 08-0652 (La.App. 4 Cir. 5/13/09), 11 So.3d 613 (Belsome, J., concurring).

. Id. at 12-13, 11 So.3d at 621.

. State v. Holmes, 619 So.2d 761 (La.App. 4 Cir. 5/27/93).

. Id. at 765.

. See State v. Dorsey, 10-0216, pp. 23-24 (La.9/7/11); 74 So.3d 603, 622-623.

. This Court pretermits any discussion of the defendant’s second assignment of error,