Judge Rosemary Ledet
|Jn this criminal appeal, the defendant, Jarvis Brown, seeks review of his convictions and sentences for armed robbery, possession of marijuana, and access device fraud. For the reasons that follow, we affirm his convictions, vacate his sentences on the armed robbery convictions only, and remand for resentencing. In all other respects, his sentences are affirmed.
STATEMENT OF THE CASE
On June 20,' 2014, the State filed a bill of information charging Mr. Brown with the following:
• Three counts of armed robbery with a firearm, in violation of La. R.S. 14:64 and 14:64.3;
• One count of possession of marijuana, in violation of La. R.S. 14:34.2; and
• ne count of access device fraud, in violation óf La. R.S. 14:70.4(E)(3).
On June 26, 2014, Mr. Brown was arraigned; he pled not guilty. On that same day, the district court appointed an attorney, Nandi Campbell, to represent Mr. Brown.
li>On August 21, 2014, Ms. Campbell requested a competency hearing. On September 11, 2014, a mental competency hearing was held. .Accepting the doctors’ recommendation, the district court found Mr. Brown competent to stand trial. At the conclusion of the hearing, Mr. Brown requested to represent himself. The district court granted Mr. Brown’s request to represent himself with Ms. Campbell as his advisor.
On October 24, 2014, Mr. Brown appeared for a hearing on his motions to suppress evidence, statement, and identification, which were previously filed by Ms. Campbell. At the hearing, Mr. Brown im formed the district court that he did not want Ms. Campbell as his advisor. At the conclusion of the hearing, the district court denied Mr. Brown’s motions to suppress evidence, statement, and identification.
On November 10, 2014, the district court granted Ms. Campbell’s motion to withdraw as counsel of record. Subsequently, Sierra Thompson, an attorney with the Orleans Public Defender, was appointed as his advisor.
On November 5, 2016, a second mental competency hearing was held. Accepting the doctors’ recommendation, the . 'district court found Mr. Brown competent to stand trial.
On March 21 and 22, 2016, a jury trial was held on the three counts of armed robbery and a bench trial was held on the misdemeanor charges—-possession of marijuana and the access device fraud. Mr. Brown was found guilty as charged on all the offenses. The district court sentenced Mr. Brown to sixty |syears at hard labor without benefit of parole, probation, and suspension of sentence on each count of armed robbery to be served concurrently with all other sentences. The district court also sentenced Mr. Brown to six months on each misdemeanor conviction to be served concurrently with all other sentences.[1] The district court denied Mr. Brown’s Motions for New Trial and to Reconsider Sentence. This appeal followed.
STATEMENT OF THE FACTS
On April 23, 2014, between 3:30 and 4:00 p.m., three victims—Michael Retif, Linda Hammerstein, and Kristina Fortier—were *524 robbed at gunpoint in the Lakeview area of New Orleans. For ease of discussion, we divide our analysis of the facts into the following two sections: the robberies and the investigation.

The Robberies

The victim of the first robbery, Mr. Re-tif, was renovating a house on the corner of Harrison Avenue and Duplessis Street. While working on the house, he noticed a green truck driving in circles around the block. Later that day, around 3:30 p.m., Mr. Retif was on a ladder scraping windows when he felt a tug on his pants pocket. When he turned around, Mr. Retif saw a young black man—later identified as Mr. Brown—pointing a gun at him. Mr. Brown demanded his wallet. Mr. Brown reached into Mr. Retifs pockets and removed his wallet and cell phone. After dropping the cell phone, Mr. Brown grabbed the wallet and ran. Mr. RBrown then entered the passenger side of a green Chevrolet truck with Texas license plates, which sped away. Mr. Retif called 911 to report the incident.[2]
Around the same time, Ms. Hammerstein was sitting on the porch of her Porteous Street residence watching her dog and exchanging text messages with her sister. She noticed a green truck pass her residence and then back up very quickly. A man emerged from the passenger’s side of the truck, approached Ms. Hammerstein, pointed a gun to her head, and demanded her cell phone. After Ms. Hammerstein relinquished her cell phone, the robber entered the passenger side of the green truck and it sped away. Ms. Hammerstein then called 911 from her residence phone and described the robber as wearing a white T-shirt and blue jeans.
Also around the same time, Ms. Fortier arrived at her home in the 6500 block of General Diaz Street with her two children—a two year old son and five year old daughter. Ms. Fortier was returning from picking up her children from school. As Ms. Fortier was removing her children from her vehicle, she noticed an older model green truck speed down Porteous Street and turn onto General Diaz Street. A black man wearing a bandana over part of his face exited the passenger’s side of the truck, and ran towards Ms. Fortier and her children. While pointing a gun at them, the robber demanded her purse. Ms. Fortier threw her purse—containing her wallet, cell phone, and several credit cards—and her keys towards |Rthe robber. The robber gathered the items and ran back to the truck. As Mr. Fortier watched the green truck fleeing the neighborhood, she noticed that it had Texas license plates. Immediately thereafter, Ms. Fortier flagged down a passing motorist, who was already on the phone with the police reporting the robbery.

The investigation

NOPD Detectives Stephen Kriebel and Roy Shackelford were patrolling the area when they received notice of the trio of armed robberies, which occurred within about a fifteen minute period. Detectives Kriebel and Schackelford relocated to the General Diaz Street address.[3] Shortly thereafter, the detectives were notified by an officer at the Porteous Street address that the victim, Ms. Hammerstein, was tracking the location of her stolen cell *525 phone, an iPhone, using the “Find my iPhone” application.
NOPD Detective Russell Green was also in the area when he received the dispatch about the three robberies. Detective Green was informed that the tracking information indicated that Ms. Hammerstein’s iPhone stopped moving around Iberville Street and Marais Street. Based on that information, Detective Green relocated to that area. He found the unoccupied, green truck parked in the area of Iberville Street and North Villere Street. After notifying the other police units of the truck’s location, he set up surveillance around the green truck. Detectives Kriebel and Schackelford also relocated to that location.
| ^Shortly thereafter, Detective Green observed three men, one of whom was identified as Mr. Brown, approaching the truck and notified other officers in the surveillance team. After the men entered the truck, NOPD surrounded the truck. The men were removed from the truck and arrested. Mr. Brown was removed from the driver’s seat and several cell phones and credit cards were recovered from his pockets. The following items were removed from the interior of the truck: two firearms (one in the front seat and the other in the back seat), a camouflage hat, a red handkerchief, a black and white bandana, Mr. Retifs bank debit card (in the back seat), and a small amount of marijuana (in the front seat).[4]
Later during the day of the robberies, Mr. Retif went to the police station. He identified the green truck as the getaway vehicle used in the robbery. Detective Shackelford presented Mr. Retif with three separate photographic lineups. Mr. Retif identified Mr. Brown as the man who robbed him.[5]
In the days following robberies, Detective Kriebel spoke with the other two victims, Ms. Hammerstein and Ms. Fortier. Neither of the other victims were able to identify the robber from the photographic lineups. Both of the other victims were able to identify the green truck used in the robbery. Furthermore, Ms. Fortier ^reported that shortly after the robbery an unauthorized charge for the purchase of gasoline was made on her stolen American Express credit card.
Detective Kriebel later relocated to the gas station where Ms. Fortier’s credit card was used. He spoke to the owner and viewed the video surveillance from the gas station.[6] Detective Kriebel also obtained the gas station’s computer printout of the receipts for April 23, 2014, which shows that $40.36 was charged on Ms. Fortier’s American Express credit card to purchase gasoline. One of the gas station employees found Ms. Fortier’s purse in a trash can and turned it over to police. Mr. Retifs wallet was found inside Ms. Fortier’s purse.
DISCUSSION
Errors Patent
A review of the record for errors patent reveals two. The first error patent *526 is that in the bill of information, the State invoked the-firearm provision of La. R.S. 14:64.3, which provides that when a firearm is used in the commission of an armed robbery the “offender shall be imprisoned for an additional period of five years without benefit of parole, probation, or suspension of sentence.” Id. At the sentencing hearing, the district court sentenced Mr. Brown to sixty years at hard labor without the benefit of probation, parole, and suspension of sentence for each of the three convictions for armed robbery with a firearm, The district court did not, however, specify whether Mr. Brown’s sentences included the mandatory additional five years imprisonment pursuant to La. R.S. 14:64.3(A). This court has | sheld that a sentence is indeterminate when it fails to impose the additional five-year enhancement as required by La. R.S. 14:64.3. State v. Amos, 15-0954, pp. 5-6 (La.App. 4 Cir. 4/6/16), 192 So.3d 822, 827; see also State v. Burton, 09-0826, p. 3 (La.App. 4 Cir. 7/14/10), 43 So.3d 1073, 1076 (finding the failure to impose the mandatory additional five years imprisonment pursuant to La. R.S. 14:64.3(A) illegally lenient). We thus vacate Mr. Brown’s sentences for the three armed robbery convictions and remand for resentencing for the imposition of the additional punishment as mandated by La. R.S. 14:64.3(A).
The second error patent involves the access device fraud portion of the State’s bill of information. The penalty for access device fraud depends upon the amount of money misappropriated. See La. R.S. 14:70.4.[7] “Value, price, or amount of damage need not be alleged in the indictment, unless such allegation is essential to charge or determine the grade of the offense.” La. C.Cr.P. art. 470. Thus, the failure to allege the amount misappropriated in the bill of information is an error.
The error, however, was harmless under the facts of this ease. See La. C.Cr.P. art. 921; State v. Guidry, 93-1091 (La. App. 1 Cir. 4/8/94), 635 So.2d 731, 735-36 (finding that the failure to allege the value of the property damaged in a bill of information charging a violation of the graded offense of simple arson was harmless and did not require vacating). Although the bill of information fails to allege the misappropriated amount, Mr. Brown’s application for bill of particulars 19fails to request any information concerning the amount. Additionally, the docket master indicates that Mr. Brown was charged with one count of “La. R.S. 14:70.4(E)(3) Access Device Fraud < $500.00.” During trial, Mr. Brown was apprised that the amount of the funds misappropriated was less than $500.00. As noted above, Detective Kriebel identified the gas station’s computer printout of the receipts from April 23, 2014, which showed that $40.36 was charged to Ms. Fortier’s stolen credit card. At the conclusion of the trial, the district court sentenced Mr. Brown to six months on the access device fraud, which is within the guidelines of La. R.S. 14.70(E)(3). Furthermore, Mr. Brown has not alleged, nor can he show, any prejudice from the State’s failure to include in the bill of information the amount of the funds misappropriated under La. R.S. 14:70. Accordingly, the error is harmless under the facts of this case.
Pro Se Assignment of Error Number 5
Mr. Brown’s fifth pro se assignment of error is sufficiency of evidence. He contends that his convictions were based *527 on circumstantial evidence—that he was arrested in a green truck similar to the vehicle used during three armed robberies and two guns and stolen property were found in the truck. In accordance with the well-settled jurisprudential rule, we address this sufficiency of evidence claim first. State v. Miner, 14-0939, p. 5 (La.App, 4 Cir. 3/11/15), 163 So.3d 132, 135 (quoting State v. Hearold, 603 So.2d 731, 734 (La. 1992); State v. Marcantel, 00-1629, p. 8 (La. 4/3/02), 815 So.2d 50, 55) (quoting Hearold, supra) (“ ‘[w]hen issues are raised on appeal as to the sufficiency of the evidence and as to one or homore trial errors, the reviewing court should first determine the sufficiency of the evidence.’ ”)
In addressing sufficiency of evidence, appellate courts are controlled by the standard enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). As the Louisiana Supreme Court stated in State v. Pigford, 05-0477, pp. 5-6 (La. 2/22/06), 922 So.2d 517, 520-21, the standard is as follows:
In reviewing the sufficiency of evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Captville, 448 So.2d 676, 678 (La. 1984). This standard, now legislatively embodied in La. C.Cr.P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact-finder. State v. Robertson, 96-1048, p. 1 (La. 10/4/96), 680 So.2d 1165; State v. Lubrano, 563 So.2d 847, 850 (La. 1990). A reviewing court may intervene in the trier of fact’s decision only to the extent necessary to guarantee due process of law. State v. Mussall, 523 So.2d 1305, 1310 (La. 1988). Accordingly, in cases relying on circumstantial evidence to prove one or more elements of the crime, when the fact-finder reasonably rejects the hypothesis of innocence advanced by the defendant at trial, that hypothesis fails, and the verdict stands unless the evidence suggests an alternative hypothesis sufficiently reasonable that rational jurors could not find proof of the defendant’s guilt beyond a reasonable doubt. State v. Lee, 01-1080, p. 12 (La. 11/28/01), 800 So.2d 833, 841; Captville, 448 So.2d at 678.

Id.

An appellate court neither assesses the witnesses’ credibility nor reweighs evidence. State v. Sparkman, 08-0472, p. 6 (La.App. 4 Cir. 1/28/09), 5 So.3d 891, 895 (citing State v. Smith, 94-3116 (La. 10/16/95), 661 So.2d 442, 443). Furthermore, when addressing the credibility of .witnesses, this court has noted the following:
| liThe determination of credibility is a question of fact within the sound discretion of the trier of fact and will not be disturbed unless clearly contrary to the evidence. State v. Brown, 12-0853, p. 2 (La.App. 4 Cir. 2/6/13), 109 So.3d 966, 968 (citing State v. Holmes, 06-2988, p. 34 (La. 12/2/08), 5 So.3d 42, 68; State v. Vessell, 450 So.2d 938, 943 (La. 1984)). “It is not the function of the appellate court to assess the credibility of witnesses or reweigh the evidence.” State v. Richards, 11-0349, p. 9 (La.App. 4 Cir. 12/1/11), 78 So.3d 864, 869 (citing State v. Cummings, 668 So.2d 1132 (La. 1996); State v. Rosiere, 488 So.2d 965, 968 (La. 1986)).
*528 In the absence of internal contradiction or an irreconcilable conflict with the physical evidence, a single witness’ testimony, if believed by the fact finder, is sufficient to support a factual conclusion. State v. Rapp, 14-0633, pp. 6-7 (La.App. 4 Cir. 2/18/15), 161 So.3d 103, 108 (citing State v. Marshall, 04-3139, p. 9 (La. 11/29/06), 943 So.2d 362, 369). When there is conflicting testimony about factual matters, the resolution of which depends upon a determination of credibility of the witness, the matter is one of the weight of the evidence, not its sufficiency. State v. Edgar, 12-0744, p. 16 (La.App. 4 Cir. 9/18/13), 140 So.3d 22, 34 writ denied, 13-2452 (La. 4/4/14), 135 So.3d 638 (citing State v. Allen, 94-1895, p. 7 (La.App. 4 Cir. 9/15/95), 661 So.2d 1078, 1084).
State v. Barbain, 15-0404, pp. 8-9 (La.App. 4 Cir. 11/4/15), 179 So.3d 770, 776-77, writs denied, 15-2213, 152179 (La. 4/4/16), 190 So.3d 1201, 191 So.3d 578; see also State v. Neal, 00-0674, p. 9 (La. 6/29/01), 796 So.2d 649, 657 (citing State v. Mussall, 523 So.2d 1305, 1311 (La. 1988)) (finding that a positive identification by only one witness is sufficient to support a conviction).
Mr. Brown contends that his armed robbery and access device fraud convictions are based on insufficient evidence.[8] We separately address each conviction.

Armed robbery with a firearm

[12To sustain a conviction of armed robbery with a firearm, the State must prove beyond a reasonable doubt that the defendant (1) took something “of value belonging to another from the person of another or that is in the immediate control of another, by force or intimidation, while armed with a dangerous weapon;” and (2) that the “dangerous weapon used in the commission of the crime of armed robbery is a firearm.” La. R.S. 14:64(A) and 14:64.3(A); see also Amos, 15-0954 at p. 11, 192 So.3d at 829.
Contrary to Mr. Brown’s contentions, there was sufficient evidence to support his convictions. As the State points out, Mr. Retif identified Mr. Brown in a photographic lineup as the individual who robbed him at gunpoint. Mr. Retif also testified at trial that Mr. Brown held him at gunpoint, removed his cell phone and wallet from his pants, and then fled the scene in a green Chevrolet truck with Texas license plates. He further testified that nothing obscured his view of Mr. Brown’s face during the armed robbery and that he recalled the robber had big, round eyes. Although neither Ms. Hammerstein nor Ms. Fortier could identify the robber because his face was partially obscured by a bandana, they identified the green truck as the vehicle in which the robber fled.
Detectives Kriebel, Shackelford, and Green all testified that they were able to track Ms. Hammerstein’s stolen iPhone to the green truck at Iberville and North Villere Streets. Mr. Brown was found in the driver’s seat.' Inside the truck, the detectives found marijuana, two firearms, a camouflage hat, a red handkerchief, a black and white bandana, and Mr. Retifs bank debit card. In addition, Detective 113Green recovered Mr. Fortier’s American Express credit card and two of the victims’ cell phones from Mr. Brown’s person. He also testified that when he dialed the number of one of the stolen cell phones, one of the phones found on Mr. Brown rang. Furthermore, Detective Kriebel identified Mr. Brown in the gas station video.
*529 At trial, Mr. Brown called the following five witnesses: Gindy Brown (Mr. Brown’s mother), May Rose Brown (Mr, Brown’s grandmother), Officer Chantell Long, Officer Kristopher Kirkland, and Detective Kriebel. Mr. Brown’s mother and grandmother testified as alibi witnesses. His mother testified that he was with her at her home during the time of the armed robberies. On cross-examination, however, she admitted that she submitted a letter to the court explaining that her son was innocent because he was at work, helping her pack, and at church during the armed robberies.[9] Mr. Brown’s grandmother testified that she last saw her grandson three days before he was arrested. At that time, Mr. Brown told her he was going to help his mother pack and move.
Officer Long testified that she was one of the officers that responded to the April 23, 2014 armed robberies on General Diaz Street and Porteous Street. She testified that the incident on General Diaz occurred around 3:45 p.m. and that she arrived on the scene around 4:00 p.m., which was approximately the same time the armed robbery on Porteous occurred. She testified that she took statements from |uMs. Hammerstein and Ms. Fortier, both of whom gave similar descriptions of the robber—a black man, around 5'5" tall, slender build, about 20 to 25 years of age. She further testified that both victims claimed that the robber demanded money and then-fled in a green truck bearing Texas license plates.
Officer Kirkland testified that he was one of the officers that responded to the crime scene, on Harrison Avenue and spoke with Mr. Retif. Officer Kirkland testified that Mr. Retif described the.robber as a black man with dark complexion, bushy or curly brown hair, medium build, unshaven, and approximately ,5'8" tall, and was wearing a T-shirt and jeans, with a bandana around his neck. The robber fled in a green truck.
Although he was also called to testify as a defense witness, Detéctive Kriebel’s testimony was essentially the same. He again testified that at the time of his arrest, Mr, Brown was wearing a white T-shirt, green jacket, and camouflage shorts.
Viewing the evidence in the light most favorable to the State, the jury was not unreasonable in concluding' that- Mr. Brown was guilty of armed robbery with a firearm.
Access device fraud[10]
|1fiTo sustain a conviction of access device fraud, the State must prove beyond a reasonable doubt that Mr. Brown (1) had the intent to defraud and (2) either possessed or transferred an access device to another person without authorization. In addition, since the determination of the severity of the offense and the degree of punishment upon conviction depends upon the -value of such, the State must also prove the value of the misappropriation. See La. R.S. 14:70.4;[11] State v. Brown, 10- *530 617, p. 11 (La.App. 5 Cir. 3/29/11), 63 So.3d 270, 276.
The court in Brown, supra, noted the following: ■
The intent to defraud element requires specific intent. State v. Sosa, 05-213 (La. 1/19/06), 921 So.2d 94, 99, and State v. Porter, 454 So.2d 220, 225 (La. App. 3 Cir.1984), writ denied, 457 So.2d 17 (La. 1984), cert. denied, 469 U.S. 1220, 105 S.Ct. 1205, 84 L.Ed.2d 347 (1985). Specific intent is defined as.“that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.” LSA-R.S. 14:10(1). Specific intent need not be proven as a fact, but may. be inferred from the circumstances and actions of the. accused. State v. Woodhead, 03-1036, pp. 7-8 (La.App. 5 Cir. 1/27/04), 866 So.2d 995, 999, writ denied, 04-598 (La. 7/2/04), 877 So.2d 144 and State v. Graham, 420 So.2d 1126, 1127 (La. 1982) (citing State v. Boyer, 406 So.2d 143, 150 (La. 1981); State v. 16McDermitt, 406 So.2d 195 (La. 1981); State v. Williams, 383 So.2d 369 (La. 1980), cert. denied, 449 U.S. 1103, 101 S.Ct. 899, 66 L.Ed.2d 828 (1981); State v. Garner, 241 La. 275, 128 So.2d 655 (La. 1961)). Further, specific intent is an ultimate legal conclusion to be determined by the fact finder and review of correctness of this determination is guided by the Jackson standard. State v. Lecompte, 371 So.2d 239, 243 (La. 1978) and Sosa, 05-213 at p. 7, 921 So.2d at 99.
Brown, 10-617 at p. 12, 63 So.3d at 277.
Contrary to Mr. Brown’s contentions, there was" sufficient evidence adduced at trial to support his conviction of access device fraud. As noted above, the State presented sufficient evidence to prove that Mr. Brown pointed a gun at Ms. Fortier and demanded her purse which contained her credit cards. Two guns were subsequently recovered from inside the green truck Mr. Brown was later found driving. Detective Kriebel testified that he obtained the gas station’s surveillance video and receipts for the day. of the robberies. He identified Mr. Brown as the individual wearing camouflage shorts exiting the green truck and filling it with gasoline at the gas station.[12] He also identified Ms. Fortier’s purse and Mr. Retif s wallet as items recovered from the gás station. Furthermore, Detective Kriebel verified that the unauthorized charge of $40.36 was made on Ms. Fortier’s American Expréss credit card at the-gas station.
Viewing the evidence in the light most favorable to the State, the district court judge was not unreasonable in concluding that Mr, Brown was guilty of access device fraud. This assignment of error is without merit.
*531 |17Counseled Assignment of Error Number 1
In his counseled, sole assignment of error, Mr. Brown contends that his sentences are unconstitutionally excessive given his status as a first offender. He argues that the sentences of his co-defendants should be taken into consideration. Mr. Brown further contehds he only played a minimal role as the driver in the robberies where no one was physically injured; he thus should receive a minimum sentence no more than twenty years.
The district court sentenced Mr. Brown to six months for the access device fraud; six months for the possession of marijuana; and sixty years at hard labor without benefit of parole, probation, and suspension of sentence on each count of armed robbery; all to be served concurrently.
As discussed in Errors Patent, we vacate Mr. Brown’s sentences for the three counts of armed robbery and remand for resentencing. Accordingly, this assignment of error is moot.
Pro Se Assignment of Error Number 1
Mr. Brown contends that he' received ineffective assistance of counsel.
Generally, ineffective assistance of counsel claims are more properly raised in an application for post-conviction relief in the district court at which a full evidentia-ry hearing on the matter may be conducted if one is warranted. State v. Leger, 05-0011, p. 44 (La. 7/10/06), 936 So.2d 108, 142; see also Barbain, 15-0404 at p. 26, 179 So.3d at 786. Nonetheless, where the record contains sufficient hRevidence, the claims may be considered on appeal in the interest of judicial economy. Id.
It is well-settled that ineffective assistance of counsel claims are reviewed under the two-part test set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). See State v. Brooks, 94-2438, p. 6 (La. 10/16/95), 661 So.2d 1333, 1337 (on reh’g). This court has outlined the test as follows:
In order to prevail, the defendant must show both that: (1) counsel’s performance was deficient; and (2) he was prejudiced by the deficiency. Brooks, supra; State v. Jackson, 97-2220, p. 8 (La. App. 4 Cir. 5/12/99), 733 So.2d 736, 741. Counsel’s performance is ineffective when it is shown that he made errors so serious that counsel was not functioning as the “counsel” guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 686, 104 S.Ct. at 2064; State v. Ash, p. 9 (La. App. 4 Cir. 2/10/99), 729 So.2d 664, 669. Counsel’s deficient performance will have prejudiced the defendant if he shows that the errors were so serious as to deprive him of a fair trial. To carry his burden, the defendant must show that there is a reasonable probability that, but for counsel’s deficient performance the result of the proceeding would have been • different; “[a] reasonable probability is a probability sufficient to undermine confidence in the outcome.” Strickland, 466 U.S. at 693, 104 S.Ct. at 2068; State v. Guy, 97-1387, p. 7 (La. App. 4 Cir. 5/19/99), 737 So.2d 231, 236.
State v. Rubens, 10-1114, pp. 58-59 (La. App. 4 Cir. 11/30/11), 83 So.3d 30, 66-67.
On appeal, Mr. Brown contends that his defense counsel was ineffective for two reasons: (i) she failed to seek a reduction of bond in magistrate court; and (ii) she failed to appear at the October 24, 2014 hearing on the motions to suppress. We separately address each issue.
[iflOn June 19, 2014, Mr. Brown, along with co-defendants Gerald Williams and Jamal. Bartley, appeared in magistrate court for a preliminary hearing. At the hearing, the three defendants were each represented by 'Counsel. At the conclusion *532 of the hearing, counsel for Mr. Williams raised the issue of bond. The following colloquy occurred between Mr. Williams’ counsel and the magistrate court judge:
COUNSEL FOR MR. WILLIAMS:
Your Honor, with regard to Gerald Williams, we were asking the Court to address the bond situation ... My understanding, talking with the District Attorney, that they’re scheduled to accept these charges on tomorrow morning and the case is going to be allotted to Section I [of the district court]. It’s my appreciation that the Court, under those circumstances, would defer any bond rulings to Section I. However, if the case is not accepted tomorrow and allotted to Section I, then Your Honor, will address the bond issue.
MAGISTRATE:
That is correct. The rules of court say that I lose jurisdiction once the case has been accepted. Since we’re on the evening of acceptance, I am going to defer to Section I. In fact, as a matter of fact, if it’s not tomorrow, you can come in Friday and I will address it.
The record reflects that the next day, the State filed the bill of information charging Mr. Brown and his co-defendants. Given that the magistrate was deferring rulings on the bond, Mr. Brown failed to show that his counsel’s failure to raise the bond issue was deficient or that he was prejudiced.
Moreover, any claim regarding Mr. Brown’s bond reduction was rendered moot following his conviction. See State v. Jones, 332 So.2d 267, 269 (La. 1976) (finding that the trial court’s failure to reduce his bond prior to trial is moot after conviction); see also State v. Miller, 12-126, p. 6 (La.App. 5 Cir. 10/16/12), 102 So.3d 956, 960 (citing State v. Crook, 517 So.2d 1131, 1132 (La. App. 5th Cir. 201987)) (noting that pre-trial bail issues become moot after conviction). Thus, the appropriate means to contest a bond ruling lies in an application for supervisory review at the time of the ruling. Miller, 12-126 at p. 7, 102 So.3d at 960, Mr. Brown’s counsel’s failure to request a bond reduction does not constitute ineffective assistance of counsel.
Mr. Brown also contends that his counsel was ineffective by failing to appear at the October 24, 2014 hearing on motions to suppress. The record, however, indicates that on September 11, 2014, Mr. Brown terminated representation by Ms. Campbell—his counsel at the time—and requested to represent himself. On that same date, the district court allowed Mr. Brown to proceed pro se with Ms. Campbell acting as his advisor.
Furthermore, Ms. Campbell was present at the suppression hearing during which Mr. Brown requested that she be removed from the case entirely. The following colloquy occurred between the district court judge and Mr. Brown:
THE COURT:
Before we begin, Mr. Brown, you have written several letters to the Court indicating that you do not wish to proceed with hiring counsel and have Ms. Campbell assist you; is that correct?
MR. BROWN:
Yes, ma’am.
THE COURT:
You wish to proceed by yourself on your own in your own defense?
MR. BROWN:
Li Yes.
THE COURT:
Ms. Campbell, as - a result of Mr. Brown’s wishes, I’m going to allow you to be removed as hybrid counsel. Mr. Brown will continue alone in his own defense.
*533 Given that counsel was present at the suppression hearing coupled with Mr. Brown’s request to represent himself, Mr. Brown can neither show any deficiency nor prejudice. Accordingly, this assignment of error is unpersuasive.
Pro Se Assignment of Error Number 2
Mr. Brown next contends that the district court erred in denying his motions to suppress evidence, statement,[13] and identification.[14]
When evidence is seized without a warrant, the State has the burden of proof to show that it was lawfully seized. See La. C.O.P. art. 703(D). In reviewing the correctness of the trial court’s pre-trial ruling on a motion to suppress, an appellate court must look at the totality of the evidence presented at the hearing on the motion to suppress and may review the entire record, including testimony at trial. State v. Monroe, 49,365, p. 6 (La.App. 2 Cir. 11/19/14), 152 So.3d 1011, 1016.
IsaMr. Brown contends that his warrantless arrest was unconstitutional. He maintains that NOPD officers conducted surveillance of the green truck for approximately an hour. He contends that during that hour, officers could have obtained a warrant. Mr. Brown further argues that the subsequent warrantless searches of his person and the green truck were unconstitutional.
The Fourth Amendment to the United States Constitution and Article I, § 5 of the Louisiana Constitution protect people against unreasonable searches and seizures. “A search and seizure conducted without a warrant issued on probable cause is per se unreasonable unless the warrantless search and seizure can be justified by one of the narrowly drawn exceptions to the warrant requirement.” State v. Surtain, 09-1835, p. 7 (La. 3/16/10), 31 So.3d 1037, 1043 (citations omitted). A war-rantless arrest, like a warrantless search, must be based on probable cause. State v. Thomas, 349 So.2d 270, 272 (La. 1977); State v. Ranker, 343 So.2d 189, 192 (La. 1977). “Probable cause to arrest exists when the facts and circumstances known to the arresting officer, and of which he has reasonable and trustworthy information, are sufficient to justify a man of ordinary caution in the belief that the accused has committed an offense.” State v. Parker, 06-0053, pp. 2-3 (La. 6/16/06), 931 So.2d 353, 355 (citing State v. Ceaser, 02-3021, p. 6 (La. 10/21/03), 859 So.2d 639, 644).
In the present ease, all the victims reported being robbed at gunpoint by a black man that fled in a green truck. *534 Based on the tracking information from Ms. Hammerstein’s stolen iPhone, Detectives Green, Kriebel, and Shackelford located | ¾⅝the green truck. Detective Green testified at trial, that surveillance of the truck started around 5:00 p.m. on the same day of the robberies, and the three men returned to the truck at approximately 5:17 p.m. After observing the men enter the truck, the detectives removed the men and placed them under arrest. Given the facts and circumstances known to the detectives at the time, the .detectives had probable cause to arrest Mr. Brown for the three armed robberies.
Incidental to Mr. Brown’s lawful arrest, Detective Green lawfully searched Mr. Brown and seized' from his person cell phones and credit cards. See Surtain, 09-1835 at pp. 7-8, 31 So.3d at 1043 (citing United States v. Robinson, 414 U.S. 218, 224, 94 S.Ct. 467, 471, 38 L.Ed.2d 427 (1973)) (noting that a search incident to a lawful arrest based on probable cause is an exception to the warrant requirement); see also State v. Gray, 11-1356, p. 16 (La.App. 4 Cir. 10/3/12), 101 So.3d 515, 523 (finding that if probable cause- to arrest defendant existed, then a full search was permitted pursuant to arrest.).
After Mr. Brown’s lawful arrest, the detectives searched the green truck, which was used throughout the commission of the three armed robberies. See Arizona v. Gant, 556 U.S. 332, 351, 129 S.Ct. 1710, 1723, 173 L.Ed.2d 485 (2009) (“Police may search a vehicle incident to a recent occupant’s arrest only if the arrestee is within reaching distance of the passenger compartment at the -time of the search or it is reasonable to believe the . vehicle contains evidence of the offense of arrest.”); see also State v. Crawford, 17-0025, pp. 2-3 (La. 2/24/17), 210 So.3d 268, 269. Thereafter, the detectives lawfully seized the following items from the interior of the truck: two firearms, a camouflage hat, a red handkerchief, a black and white bandana, and Mr. Retif s bank debit card.
Based on the facts and circumstances, the district court did not abuse its discretion in denying Mr. Brown’s motion to suppress the evidence. This assignment of error lacks merit.
Pro Se Assignments of Error Numbers 3[15] and 8
Mr. Brown contends that the State committed prosecutorial misconduct by failing to turn over all evidence intended for use at trial. Although he fails to identify the evidence that was improperly introduced at trial, the record reveals that he sought to exclude the introduction of the 911 audio recordings into evidence. During-the pre-trial motions hearing held on- the first day of trial, Mr. Brown requested that the district court -exclude the 911 audio recordings from evidence due to the State’s failure to disclose the evidence. Mr. Brown fürther contends that the district court erred by failing to grant a continuance of trial due to this- “newly discovered evidence.”
*535 The State counters that all evidence, including the 911 audio recordings, was turned over to Mr. Brown and his prior counsel. Since Mr. Brown was unable to bring the discs containing the 911 audio recordings back to Orleans Parish Prison, | RRthe district court judge maintained custody of Mr. Brown’s copies of the discs tendered by the State. The State contends that Mr. Brown has had multiple occasions to review all the evidence in the district court’s possession, including the 911 audio recordings.
On November 20, 2014, during a hearing, the State turned over discovery to Mr. Brown. At the hearing, the district court judge addressed Mr. Brown as follows:
All right. And as to you, Mr. Brown, because you’re representing yourself, you can’t take the audio or video back with you. So what I’ll do is, the Court’s going to take custody for you, and then whenever you’re in court, you’ll have the opportunity to review everything.
So, today at the end of court when we’re done, you’ll be able to be in the jury room and be able to review what’s been provided to you. Okay.
After Mr. Brown raised the issue of the 911 audio recordings during the pre-trial motions, the district court reviewed the evidence it had in its control. The district court then stated as follows:
[Where is the] stack of disks that Mr. Brown has ’ been repeatedly going through, leading up to trial.
Let the record reflect that I have in my hand, a stack of manila envelopes that have been in the possession of the Court for Mr. Brown’s review at every pre-trial conference that he’s requested.
Thereafter, the district court specifically identified the 911 audio recordings that Mr. Brown alleged he had not received. The district court then gave Mr. Brown another opportunity to listen to the 911 audio recordings before trial commenced.
12r,Contrary tó Mr. Brown’s contentions, the - record indicates that the State disclosed the 911 audio recordings before trial. Accordingly,’these assignments of error lack merit. ■
Pro Se Assignment of Error Number 4
Mr. Brown contends that the district court erred by denying his motion to suppress identification. He contends that the identification made by Mr. Retif from the photographic lineup presented by Detective Shackelford was unduly suggestive. The gist of Mr. Brown’s argument is that Detective Shackelford communicated to Mr. Retif the photograph he should choose. ’
Enunciating the standard for the admissibility of identification evidence, this court in State v. Green, 10-0791, pp. 7-8 (La.App. 4 Cir. 9/28/11), 84 So.3d 573, 579-80, stated the following:
A trial court’s determination of the admissibility of identification evidence is entitled to great weight and will not be disturbed in the absence of an abuse of discretion. State v. Stovall, 2007-0343, p. 17 (La.App. 4 Cir. 2/6/08), 977 So.2d 1074, 1085. In reviewing a trial court’s ruling on a motion to suppress, an appellate court is not limited to evidence adduced at the hearing on the motion to suppress; it may also consider any pertinent evidence given at trial of the case. State v. Brown, 2009-0884, p. 3 (La.App. 4 Cir. 3/31/10), 36 So.3d 974, 978 (motion to suppress one-on-one identification).
The defendant bears the burden of proving that an out-of-court identification was suggestive and that there was a substantial likelihood of misidentification as a result of the identification procedure. State v. Ballett, 98-2568, p. 17 (La. App. 4 Cir. 3/15/00), 756 So.2d 587, 597; State v. Martello, 98-2066, p. 8 (La.App. *536 4 Cir. 11/17/99), 748 So.2d 1192, 1198. A defendant must first prove that the identification was suggestive. State v. Thibodeaux, 98-1673, pp. 20-21 (La. 9/8/99), 750 So.2d 916, 932. An identification procedure is suggestive if, during the procedure, the witness’s attention is unduly-focused on the accused. State v. Campbell, 2006-0286, pp. 87-88 (La. 5/21/08), 983 So.2d 810, 866.
li>7At the suppression hearing and at trial, Detective Shackelford testified that since three suspects were arrested for the armed robberies, he presented Mr. Retif with three separate photographic lineups. When viewing the second lineup, which contained Mr. Brown’s photograph, Mr. Retif reviewed each picture and identified Mr. Brown as the robber. Detective Shack-elford further testified that he did not suggest, force, coerce, or threaten Mr. Re-tif into making an identification. He also testified that he recorded the photographic lineups; and the audio recording was played for the jury.
A review of the recording indicates that upon seeing Mr. Brown’s photograph, Mr. Retif was unsure. After viewing it again, however, Mr. Retif stated that Mr. Brown was potentially the robber. He further noted that Mr. Brown’s eyes were similar to those of the robber. At the conclusion of the lineup, Mr. Retif identified Mr. Brown as the robber.
Mr. Brown further argues that Mr. Retif admitted to Ms. Fortier that Detective Shackelford suggested that Mr. Brown was the robber. During cross-examination by Mr. Brown, Ms. Fortier testified that she spoke with Mr. Retif before trial. According to Ms. Fortier, Mr. Retif said “that he was assisted with the photo lineup.” Mr. Retif, however, explained that Ms. Fortier misunderstood what he told her. He denied that anyone suggested whom he should identify. He further explained that after the lineups were completed, a NOPD officer approached him and stated “I’m glad you picked the right guy.” Furthermore, as noted elsewhere, Mr. Retif testified at trial that Mr. Brown held him at gunpoint and robbed him 128before fleeing. As a result, he testified that he had a clear view of Mr. Brown’s face during the armed robbery.
Conflicting testimony is a matter of the credibility of witnesses. The credibility of witnesses presenting conflicting testimony on factual matters is within the sound discretion of the trier of fact. State v. Robinson, 07-832, p. 15 (La.App. 5 Cir. 4/15/08), 984 So.2d 856, 866. “It is not the function of the appellate court to second-guess the credibility of witnesses as determined-by the trier of fact or to reweigh the evidence absent impingement on the fundamental due process of law.” Id. (citing State v. Baker, 01-1397, p. 3 (La. App. 5 Cir. 4/30/02), 816 So.2d 363, 365). The jury heard the conflicting testimony of the witnesses and found Mr. Brown guilty of three counts of armed robbery. Accordingly, this assignment of error lacks merit.
| MPro Se Assignment of Error Number 6
Mr. Brown contends that the State’s witnesses—specifically, Detectives Shackelford, Kriebel, and Green and Mr. Retif—gave inconsistent statements and falsely testified at trial. He further contends that the prosecutor made false statements to the jury. Mr. Brown thus contends that his convictions should be reversed. Mr. Brown, however, fails to specify which statements were inconsistent, false, or both. As discussed elsewhere, any conflict in testimony is within the sound discretion of the trier of fact. Robinson, 07-832 at p. 15, 984 So.2d at 866. Moreover, the record is void of any evidence that the State’s witnesses provided false *537 testimony. Accordingly, this assignment of error lacks merit.
Pro Se Assignment of Error Number 7
Mr. Brown contends that the district court erred in denying his challenge for cause as to Juror Ms. Nguyen.[16]
Louisiana Constitution Article I, § 17 guarantees to a defendant the right to full voir dire examination of prospective jurors and the right to challenge jurors peremptorily. While the exercise of a peremptory challenge is provided through legislation, it is not merely a statutory right. State v. Lewis, 12-1021, p. 10 (La. 3/19/13), 112 So.3d 796, 802. “[T]his court has long recognized that when a defendant is forced to utilize a peremptory challenge to correct a district court’s error in denying a challenge for cause and thereafter exercises all available peremptory challenges on other prospective jurors, a substantial right of the defendant, guaranteed by the Louisiana constitution, is affected.” Id. (citing State v. Monroe, 366 So.2d 1345, 1347 (La. 1978)). In such cases, prejudice is presumed. Id. Accordingly, to establish reversible error in the denial of a challenge for cause, “a defendant must show: (1) that he exhausted all of his peremptory challenges; and (2) that the trial court erred in refusing to grant his challenge for [iincause.” State v. Dotson, 15-0191, p. 5 (La.App. 4 Cir. 2/17/16), 187 So.3d 79, 82 (footnote omitted).
In this case, Mr. Brown did not exhaust all of his peremptory challenges; rather, he only used four of his twelve peremptory challenges. Given that Mr. Brown did not exhaust all of his peremptory challenges, he is precluded from appellate review of this claim. Hutchinson v. State, 15-611, p. 15 (La.App. 5 Cir. 4/27/16), 190 So.3d 1264, 1274. This assignment of error lacks merit.
Pro Se Assignment of Error Number 9
Mr. Brown contends that the district court erred in failing to instruct the jury on the mandatory sentence for a conviction of armed robbery with a firearm.
The law regarding whether the inclusion of sentencing ranges in arguments and jury instructions was summarized by the Louisiana Supreme Court as follows:
When the penalty imposed by the statute is a mandatory one, the trial judge must inform the jury of the penalty on request of the defendant and must permit the defense to argue the penalty to the jury. In instances other than when a mandatory legislative penalty with no judicial discretion as to its imposition is required following verdict, the decision to permit or deny an instruction or argument on an offense’s penalty is within the discretion of the trial judge.
State v. Jackson, 450 So.2d 621, 633-34 (La. 1984) (internal citations omitted); see also State v. Willis, 07-1393, p. 4 (La.App. 4 Cir. 6/11/08), 987 So.2d 349, 352.
In this case, Mr. Brown was convicted of armed robbery, a violation of La. R.S. 14:64, which carried a sentence of imprisonment at hard labor for not less than ten *538 years and for not more than ninety-nine years. See La. R.S. 14:64(B). As such, Mr. Brown'was charged with a crime having a mandatory minimum sentence |31and a maximum sentence, subject to the district court’s discretion. This is not a case in which the district court was mandated to instruct the jury and to allow argument concerning the range of sentence. Accordingly, this assignment of error lacks merit.
DECREE
For the forgoing reasons, Mr. Brown’s convictions are affirmed; his sentences on the armed robbery convictions only are vacated and the case is remanded for re-sentencing consistent with the views expressed herein. In all other respects, Mr. Brown’s sentences are affirmed.
CONVICTIONS AFFIRMED; SENTENCE VACATED; REMANDED
LOMBARD, J., CONCURS.

. As a condition of probation, the district noted that, pursuant to La. R.S. 13:753(A)(5), Mr. Brown is prohibited from possessing or purchasing a firearm.

. At trial, the 911 audio recordings from all three victims were played for the jury. The 911 recordings and incident recall document were authenticated by Rachel Smith, an operator and records custodian with the New Orleans Police Department (“NOPD”) Communications Department.

. The detectives later retrieved a Project NOLA video from a neighbor that captured the green truck driving down General Diaz Street. The video was introduced at trial.

.During the trial on the misdemeanor charges and outside the presence of the jury, the State and Mr. Brown stipulated that John Wong, NOPD Crime Lab Technician, was an expert in the analysis and identification of controlled dangerous substances. Mr. Wong testified that he tested the contents of one small plastic bag of vegetative matter seized in this case, which confirmed that the contents were marijuana.

. Detective Shackelford recorded the photographic lineups; the recordings were played for the jury at trial.

. At trial, the State played the surveillance video.

. La. R.S. 14:70.4(E)(3) provides that "[w]hen the misappropriation or taking amounts to a value of less than five hundred dollars, the offender shall be imprisoned for not more than six months or fined not more than five hundred dollars, or both.”

. Mr. Brown does not raise a sufficiency of evidence claim as to his possession of marijuana conviction.

. His mother also testified that she did not have a criminal record, but she admitted to pleading guilty to contributing to the delinquency of a juvenile and theft of goods.

. Because the access device fraud of less than $500.00 charge is not triable by jury, the proper mode of appellate review is by writ rather than appeal. See La. C.Cr.P. art. 912.1. Since felony and misdemeanor trials occurred simultaneously and Mr. Brown’s sentences were ordered to run concurrently, they are intertwined with each other. In the interest of judicial economy, we thus address the misdemeanor conviction on appeal. See State v. Williams, 07-490, p. 2 (La.App. 3 Cir. 10/31/07), 969 So.2d 744, 746.

. La. R.S. 14:70.4 provides in pertinent part as follows:
*530 A. No person shall without authorization and with the intent to defraud transfer an access device to another person.
B. No person shall without authorization and with the intent to defraud possess an access device issued to another person.
[[Image here]]
D, As Used herein:
' (1) "Access device” means a person’s social security number, driver’s license number, birth date, mother’s maiden name, checking account numbers, savings account numbers, personal identification numbers, electronic identification numbers, digital signatures, or other means of account access that can be used to obtain anything of value, whether contemporaneously or not.

. At trial, the State also introduced a picture of the following three items: d white T-shirt bearing the imprint "The Beatles,” a pair of camouflage shorts,.and a jacket. According to Detective Kriebel, the clothes depicted in the picture are the same items of apparel Mr. Brown is seen wearing in the gas station video.

. Mr. Brown contends that he was not advised of his rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). It is well-settled that before the State may introduce an inculpatory statement or confession into evidence, it must first prove that the accused was advised of his Miranda rights. State v. Taylor, 13-0265, p. 4 (La.App. 4 Cir. 4/29/15), 165 So.3d 1115, 1118 (quoting State v. Butler, 04-0880, p. 4 (La.App. 4 Cir. 1/12/05), 894 So.2d 415, 418. The record, however, is void of any statements made by Mr. Brown that were submitted as evidence. The record also reveals that Mr. Brown did not make any statements to police. At the hearing on the motions to suppress, Detective Shackelford testified that "[Mr. Brown] refused to speak to me” and did not make any statements. Contrary to Mr. Brown’s contentions, the record indicates that Mr. Brown was advised of his Miranda rights. At the hearing on the motions to suppress, Detective Green testified that he advised Mr. Brown of his Miranda rights. Detective Shackelford also testified that he advised Mr. Brown of his Miranda rights before conducting interviews. We therefore find no merit to this issue.

. Mr. Brown's Pro Se Assignment of Error Number 4 addresses the district court’s denial of his motion to suppress identification. This issue, therefore, is discussed therein.

. In his third assignment of error, Mr. Brown also notes that he filed a motion for speedy trial without an accompanying affidavit. He contends that the district court committed error by failing to conduct a contradictory hearing as required by La. C.Cr.P. art. 701(F). Article, 701(F) provides that "[a] motion for a speedy trial filed , by the defendant, but not verified by the affidavit of his counsel, shall be set for contradictory hearing within thirty days.” It is well-settled that a statutory speedy trial claim is a pre-trial claim that becomes moot upon conviction. State v. Otkins-Victor, 15-340, p. 71 (La.App. 5 Cir. 5/26/16), 193 So.3d 479, 529; see also State v. Guy, 99-1893, p. 10 (La.App. 4 Cir. 7/19/00), 775 So.2d 454, 460 (citing State v. Kelly, 92-2446, p. 18 (La.App. 4 Cir. 7/8/94), 639 So.2d 888, 896). This claim is thus moot.

. Mr. Brown first raised his concerns with Ms. Nguyen the day following the conclusion of jury voir dire and before opening statements. Mr. Brown claimed that Ms. Nguyen stated that she would not be fair and impartial. She stated that her husband was once a victim of armed robbery. Mr. Brown also argued that the juror became hostile. The district court judge, however, responded as follows:
All right. I disagree. We’ve had the opportunity to have extensive conversations about jury selection in Chambers. You didn't raise an objection as to Ms, Nguyen throughout the course of jury selection.
After jury selection Ms. Nguyen had concerns about child care issues that apparently have been resolved. That’s not a basis for removing her from the jury. And she’s not removed.